587 F.2d 428
 The SKOKOMISH INDIAN TRIBE, Plaintiff-Appellant,
v.
GENERAL SERVICES ADMINISTRATION, Arthur F. Sampson, Acting
Administrator, V. L. Barnes, Chief, Real Property Division,
G.S.A. Regional Center, Maurice Lundy, Regional Director of
Pacific Northwest Region, United States Bureau of Outdoor
Recreation, Defendants-Appellees.
 No. 77-1440.
 United States Court of Appeals,
Ninth Circuit.
 Dec. 4, 1978.
 
 1
 Alexandra Harmon, Shelton, Washington, D.C., for appellant-petitioner.
 
 
 2
 Carl Strass and Peter R. Steenland, Jr., Attys., Washington, D.C., for appellee-respondent.
 
 
 3
 Appeal from the United States District Court For the Western District of Washington.
 
 
 4
 Before KOELSCH and KENNEDY, Circuit Judges, and JAMESON,* District Judge.
 
 JAMESON, District Judge:
 
 5
 The Skokomish Indian Tribe brought this action seeking declaratory and injunctive relief from the General Services Administration's (GSA) rejection of requests by the Bureau of Indian Affairs (BIA) to transfer 80 acres of "excess" federal land to the BIA for development of educational and vocational programs to benefit the Tribe. The Department of Agriculture had declared the 80 acres, known as the Hoodsport Administrative Site, as "excess" because it no longer required the use of the land. The BIA first requested the land in October, 1972, after receiving notice of its availability. The GSA rejected the request and on January 2, 1973, notified the BIA that it was disposing of the property as "surplus" to the Bureau of Outdoor Recreation (BOR).[1] Excess property is "any property under the control of any Federal agency which is not required for its needs and the discharge of its responsibilities . . . ." 40 U.S.C. § 472(e). Surplus property is "any excess property not required for the needs and the discharge of the responsibilities of All Federal agencies . . ." 40 U.S.C. § 472(g) (Emphasis added).
 
 
 6
 On January 16, 1973, the Tribe, as beneficiary of the BIA, brought this suit against GSA and BOR to have the rejection declared illegal and an abuse of administrative discretion in violation of the Federal Property and Administrative Services Act (FPASA), 40 U.S.C. § 471 Et seq., and to enjoin the transfer of the land. On cross motions for summary judgment, the district court held that the rejection of the BIA's request was within the discretion of the agency, not arbitrary or capricious and not violative of any statutory mandate. The Tribe appealed.
 
 
 7
 On March 6, 1978, subsequent to oral argument on this appeal, the court was notified by letter that on February 28, 1978, the Secretary of the Interior had endorsed the application of the BOR and would notify the GSA that the application of the BIA would not be pursued and should be considered withdrawn. On March 24, 1978, the court ordered the parties to submit supplemental briefs covering, but not limited to, three questions: (1) whether this court in its disposition of this appeal, must take notice of this decision of the Department of Interior and Bureau of Indian Affairs; (2) whether the Bureau of Indian Affairs has the power to withdraw its request to GSA at this time; and (3) whether the Skokomish Indian Tribe, could seek to stay or prevent the decision of the Department of the Interior from being carried out.
 
 
 8
 On April 17, 1978 the court received a copy of a letter dated March 24, 1978 from the Undersecretary of the Interior to the Administrator of GSA stating that he had "determined to disavow" BIA's application to GSA for the Hoodsport property and to endorse the State of Washington's application to acquire the property for public park and recreation purposes. Subsequent thereto the parties filed supplemental briefs pursuant to the court's order.
 
 
 9
 Preliminary to a consideration of the contentions of the respective parties in their supplemental briefs, we note action taken within the Department in connection with the Secretary's "disavowal" of BIA's application and the Secretary's response to the Tribe's protest.
 
 
 10
 A memorandum dated January 31, 1978 to the Secretary of the Interior from the Director of the Heritage Conservation and Recreation Service (HCRS),[2] formerly BOR, "strongly recommend(ed) that the Department's position be that of firmly supporting the State of Washington's right to the property for public park and recreation purposes".[3] The memorandum stated, however, that the "Bureau of Indian Affairs remains firm in their request that we return the subject property to GSA." On February 28, 1978, the Secretary concurred in the recommendation of HCRS.
 
 
 11
 A letter from the Secretary to the Tribe[4] dated April 13, 1978, reads:
 
 
 12
 I am pleased to respond to your March 7 letter concerning the Department's action to disavow the applications previously submitted by the Bureau of Indian Affairs to the General Services Administration to acquire the 80-acre Hoodsport, Washington, surplus property; and, to endorse the State of Washington's application to acquire the property for public park and recreation purposes.
 
 
 13
 Before arriving at a decision in this matter, consultations were held with both the Bureau of Indian Affairs and the Heritage Conservation and Recreation Service (formerly Bureau of Outdoor Recreation). We also sought the advice of the Solicitors of both agencies and that of the Assistant Secretary for the Bureau of Indian Affairs and the Assistant Secretary for Fish and Wildlife and Parks.
 
 
 14
 I regret that you are dissatisfied with my decision, but I assure you that it was made solely on the merits and legal elements of the conflicting applications.
 
 
 15
 We recognize the desire of the Skokomish Tribe for lands suitable for recreation and job training programs and we will be more than happy to work with you in acquiring other lands excessed in the future.
 
 
 16
 In its supplemental brief the Tribe contends that (1) this court is not required to take notice of or defer to the Secretary's decision; (2) the Secretary is estopped from withdrawing the BIA application; and (3) the court may prevent the Secretary from resolving this litigation by withdrawing BIA's application. The appellees contend that the Secretary had power to resolve the internal departmental dispute between BIA and BOR in favor of BOR and withdraw BIA's request to GSA; that the Tribe made no attempt to resolve the dispute within the Department before bringing suit against GSA; and that the Secretary's decision moots this case.
 
 
 17
 The crucial question now before the court is whether the Secretary had power to withdraw the BIA's application and render this appeal moot. Appellees oversimplify the issue in arguing that it was merely an internal dispute between two agencies of the Department of the Interior, BIA and BOR, as to which agency was entitled to the land. BIA had requested the land for the Tribe as "excess" property. BOR requested it for the Washington State Parks and Recreation Commission as "surplus" property. Property may be declared "surplus" only upon a determination by GSA that no federal agency needs the property in the "discharge of its responsibilities".[5] In other words, this was not a case where the Secretary simply chose between two agencies of the Department, both of which had requested the land as "excess" property for the agency's use. Rather it was necessary to withdraw BIA's application for "excess" property before the property could properly be transferred to BOR (now HCRS) as "surplus" property for the benefit of Washington State Parks and Recreation Service.[6]
 
 
 18
 The Tribe concedes that the Secretary would have had authority in 1972 to block the BIA application for the excess land and assumes, for the sake of argument, that the Secretary also had discretion to "withdraw the BIA application for policy reasons even after it had been submitted to and rejected by GSA". The Tribe contends, however, that under the present posture of this case the Secretary in effect has made a determination of law that should be made by this court and that such a decision is not within his discretion.[7] In determining whether the Secretary had authority to withdraw the BIA's application at this stage of the litigation we consider first applicable provisions of the FPASA.
 
 
 19
 The FPASA provides that each executive agency[8] shall, as far as practicable, "transfer excess property under its control to other Federal agencies"[9] or specified organizations, and "obtain excess property from other Federal agencies". 40 U.S.C. § 483(c)(2) and (3). The Secretary of the Interior, as head of his department, has broad powers to delegate his authority.[10] He has delegated to each of his bureau heads the right to obtain excess property from other Federal agencies, in accordance with § 483(c) (3) and appropriate regulations of GSA. Department of Interior Manual, 205 DM 10.3A(3). This delegation did not, however, divest the Secretary himself of the power to exercise his authority or relieve him of the responsibility for action taken pursuant to the delegation. 200 DM 1.9. The head of the BIA, pursuant to delegated authority, submitted a request to GSA for the excess property, but the Secretary himself retained final authority over the request.
 
 
 20
 Neither the statute nor GSA regulations contain any express provision with respect to the withdrawal of requests for excess property.[11] We see no reason why the Secretary may not withdraw a request submitted by one of his agencies at any time prior to the transfer of the property. The Tribe is relying upon a request which was rejected by GSA and subsequently withdrawn by the Secretary. In withdrawing the request the Secretary acted within his authority in overruling one of his agencies, the BIA. The Tribe had no vested interest in the property. That is true even though the GSA may have erroneously concluded that the BIA was "ineligible" to reserve the property for the benefit of the Tribe. We are not now concerned with the question of whether the GSA abused its discretion in arriving at this decision, but whether the Secretary abused his discretion in withdrawing a request which had been rejected.
 
 
 21
 Is the decision of the Secretary to withdraw the request of BIA subject to judicial review? The Administrative Procedure Act, 5 U.S.C. §§ 701-706, excepts from judicial review "agency action . . . committed to agency discretion by law". § 701(a)(2). A court may, however, set aside agency action found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law". 5 U.S.C. § 706(2)(A). The Supreme Court noted in Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 410, 91 S.Ct. 814, 821, 28 L.Ed.2d 136 (1971) that the exception for action "committed to agency discretion" is a very narrow one and "applicable in those rare instances where 'statutes are drawn in such broad terms that in a given case there is no law to apply' ". This court reviewed decisions of the circuit both prior and subsequent to Overton Park and concluded:
 
 
 22
 Where consideration of the language, purpose and history of a statute indicate that action taken thereunder has been committed to agency discretion: (1) a federal court has jurisdiction to review agency action for abuse of discretion when the alleged abuse of discretion involves violation by the agency of constitutional, statutory, regulatory or other legal mandates or restrictions; (2) but a federal court does not have jurisdiction to review agency action for abuse of discretion when the alleged abuse of discretion consists only of the making of an informed judgment by the agency.
 
 
 23
 Ness Investment Corp. v. United States Dept. of Agriculture, 512 F.2d 706, 715 (9th Cir. 1975); Strickland v. Morton, 519 F.2d 467, 471 (9th Cir. 1975). We recognize that Ness and Strickland are factually distinguishable. Counsel have not cited, nor have we found, any cases precisely in point.
 
 
 24
 It is clear, however, that the ultimate decision regarding the BIA request is one for the Secretary. In its second supplemental brief the Tribe recognizes that, "If the Secretary had vetoed a BIA application before it was made or before GSA rejected it and decided to dispose of the land as surplus, there would have been no basis for a lawsuit against GSA and BOR." While contending that the court may properly order HCRS to return the land to GSA for assignment to BIA, the Tribe argues further that if the court goes no further than "ordering GSA to take the land back as excess and to process it legally, the Secretary will be free to reconsider his decision regarding the BIA's application in light of a clear judicial determination that the BIA use of excess land proposed here is permitted by the Federal Property and Administrative Services Act". Upon reconsideration the Secretary would, of course, still have authority to withdraw BIA's request for the land.
 
 
 25
 In our view of the present status of both the judicial and administrative proceedings, we could go no further than to remand for further consideration by GSA, with an opportunity in turn for reconsideration by the Secretary. It seems unlikely in view of the action taken by the Secretary himself, as distinguished from the position of the BIA, that upon further consideration the Secretary would renounce his withdrawal of BIA's request.[12] To remand for further consideration by GSA and the Secretary would simply prolong a controversy that has been going on for almost six years.
 
 
 26
 While the Tribe makes a plausible argument in support of its position, we cannot find that under the unusual and complex situation presented by both the administrative and judicial proceedings the Secretary has abused his discretion or acted arbitrarily or capriciously, or in violation of law, in withdrawing the BIA request.[13]
 
 
 27
 Nor can we find that the Tribe is entitled to invoke its claim of estoppel. The facts do not establish the necessary elements for either equitable estoppel, see United States v. Georgia-Pacific Co., 421 F.2d 92, 96 (9th Cir. 1970), or judicial estoppel, see Duplan Corp. v. Deering-Milliken, Inc., 397 F.Supp. 1146, 1177-78 (D.S.C.1975); 1 B Moore, Federal Practice, P 0.405(8) at 765-67 (2d Ed.1974).
 
 
 28
 Having determined that the Secretary, within his discretionary powers, could withdraw the BIA's application for the Hoodsport property and that the Secretary may not be estopped from doing so, we conclude that his action has mooted this case. Although a court may continue an appeal which otherwise would be moot where the controversy is "capable of repetition, yet evading review", Southern Pacific Terminal Co. v. I.C.C., 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911), a court may "not entertain the appeal so as to advise the parties of what their rights would be in what is essentially a new legal controversy". Alton & Southern Railway Co. v. International Ass'n of Machinists & Aerospace Workers, 150 U.S.App.D.C. 36, 43, 463 F.2d 872, 879 (1972). Due to the unique circumstances under which this case arose and to the Secretary's avowed intent to help the Skokomish obtain excess lands suitable for recreation and job training programs, we think any future controversy between the Skokomish and GSA would "essentially (be) a new legal controversy.
 
 
 29
 The cause is therefore remanded to the district court with directions to vacate the district court judgment on the grounds of mootness.
 
 
 30
 Remanded with directions.
 
 
 
 *
 The Honorable William J. Jameson, Senior United States District Judge for the District of Montana, sitting by designation
 
 
 [1]
 At the same time GSA notified the BOR of its decision and stated that it would have no objection to the proposed transfer of the property to the Washington State Parks and Recreation Commission for parks and recreational purposes
 
 
 [2]
 Attachment A to appellant's second supplemental brief
 
 
 [3]
 The memorandum stated that HCRS's position "was based on the fact that: (1) The property was surplused by GSA in accord with existing regulations and the Court upheld their actions as proper; and (2) the State of Washington made proper application for the property for public park and recreation purposes and GSA approved the State's request."
 
 
 [4]
 Attachment D to appellant's second supplemental brief
 
 
 [5]
 In a House report on amendments to the FPASA, the distinction between surplus and excess property was described as follows: "Surplus real property, in contrast to excess real property, is Federal property which, after being screened by every Federal agency, has been found to be without further need by any Federal agency." H.R. Rep. No. 1339, 93d Cong., 2d Sess. (1974) at 2
 
 
 [6]
 It appears from the memorandum to the Secretary from the Director of HCRS that the Department of Justice and Solicitor of the Department of the Interior recognized the distinction between "excess" and "surplus" property. The memorandum stated in part: "We were advised by the Solicitor and Justice that the appellate court would probably find in favor of the Indians and they urged us to return the property to GSA."
 
 
 [7]
 The Tribe argues that the Secretary's action here was "very different from a routine exercise of administrative discretion" because he adopted as his own two key BOR claims: (1) that the Hoodsport property was designated surplus by GSA in accord with existing regulations and the district court upheld GSA's action as proper; (2) that the State of Washington made proper application for the property which was subsequently approved by GSA. See Attachment A, appellant's second supplemental brief
 
 
 [8]
 An "executive agency" is any executive department or independent establishment in the executive branch of the government, including any wholly owned government corporation. 40 U.S.C. § 472(a)
 
 
 [9]
 A "Federal agency" is any executive agency or any establishment in the legislative or judicial branch of government (except the Senate, the House of Representatives, and the Architect of the Capitol and any activities under his direction). 40 U.S.C. § 472(b)
 
 
 [10]
 See 5 U.S.C. § 302; Reorganization Plan No. 3 of 1950; 5 U.S.C. § 903
 
 
 [11]
 GSA regulations do, however, provide that an agency which has reported property to GSA as excess and available for disposition, may subject to GSA approval, withdraw its report "at any time prior to transfer to another Federal agency or prior to execution of a legally binding agreement for disposal as surplus property". 41 C.F.R. § 101-47.203-10 (1977)
 
 
 [12]
 Moreover, the Secretary has recognized in his letter to the Tribe the Tribe's desire for recreation and job training programs and has promised to work with the Tribe in acquiring other excess lands in the future
 
 
 [13]
 A different question, of course, is presented as to whether the action of GSA was an abuse of discretion and not in accordance with law, a question we need not now determine