UNITED STATES STEEL CORPORA-
TION, a corporation, Plaintiff,

v.

INDUSTRIAL WELFARE COMMISSION
OF the STATE OF CALIFORNIA et
al., Defendants.

KAISER STEEL CORPORATION, a
corporation, et al., Plaintiffs,

v.

INDUSTRIAL WELFARE COMMISSION
OF the STATE OF CALIFORNIA et
al., Defendants.

Nos. C–77–2622 SW, C–77–2788 SW.

United States District Court,
N. D. California.

June 12, 1979.

**538**

Thomas R. Hogan, Fredric C. Nelson, Kristian D. Whitten, Thelen, Marrin, Johnson & Bridges, San Francisco, Cal., for plaintiffs Kaiser Steel Corporation, Kaiser Steel Tubing, Inc. and Myers Drum Co.

McCutchen, Doyle, Brown & Enersen, Craig McAtee, Charles A. Ferguson-Lawrence, James B. Lewis, San Francisco, Cal., for plaintiff United States Steel Corp.

Evelle J. Younger, Atty. Gen. of the State of California, Gordon Zane, Deputy Atty. Gen., San Francisco, Cal., Division of Labor Standards Enforcement, Louis Giannini, Guy T. Gurney, Charlotte C. Danforth, Richard N. Dinallo and John C. Herbert, San Francisco, Cal., for defendants.

## ORDER OF DISMISSAL FOR MOOTNESS

SPENCER WILLIAMS, District Judge.

Plaintiffs in these two related cases seek declaratory and injunctive relief from the enforcement of Order 1–76 promulgated by defendant Industrial Welfare Commission of the State of California. Order 1–76, effective October 18, 1976 and applicable to the manufacturing industry, regulates hours and days of work, minimum wages, reporting time pay, permits and licenses for handicapped workers, records, cash shortages and breakage, uniforms and equipment, meals and lodging, meal periods, rest periods, change rooms and resting facilities, seats, temperature, elevators and lifting.

Plaintiff United States Steel Corporation manufactures steel and steel products throughout the United States. It operates nine separate facilities in California at which it employs approximately 3600 employees who are covered by nationwide collective bargaining agreements entered into pursuant to the National Labor Relations Act ("NLRA"), 29 U.S.C. §§ 151–68.

Plaintiff Kaiser Steel Corporation also manufactures steel at several facilities in California. Plaintiffs Kaiser Steel Tubing, Inc. and Myers Drum Company are wholly owned subsidiaries of Kaiser Steel Corporation. The parent and its two subsidiaries will be referred to collectively as "Kaiser." Approximately 9000 California Kaiser employees are covered by collective bargaining agreements entered into pursuant to the NLRA.

Defendant Industrial Welfare Commission ("IWC") is a statewide California agency whose duties are to ascertain and set wages, hours and conditions of employment for employees within the state. The IWC is a commission in the Division of Labor Standards Enforcement, which is in the Department of Industrial Relations, all created and existing pursuant to the laws of California. Defendant James Quillan is the Chief of the Division of Labor Standards Enforcement.

The gravamen of plaintiffs' actions is that the regulations set forth by the IWC in Order 1–76 cover terms and conditions of employment which are preempted by the NLRA. They contend that 29 U.S.C. § 158(d), which provides that employers and employees must bargain collectively with respect to "wages, hours and other terms and conditions of employment," precludes state regulation of these subjects. Plaintiffs have moved for summary judgment with respect to certain portions of Order 1–76 and defendants have filed cross motions for summary judgment. Defendants move in the alternative for an order dismissing the actions for failure to exhaust administrative remedies or on the basis of the doctrine of abstention. These motions are currently pending before this court.

Another action challenging the validity of Order 1–76 and raising many of the same preemption issues as plaintiffs have raised here has been proceeding through the state courts under the name *California Manufacturers Association v. Industrial Welfare*

*Commission.*[1] That action was brought by the California Manufacturers Association on behalf of approximately 500 private enterprise employers against the IWC and James Quillan. The state trial court upheld the validity of Order 1–76 with respect to all its provisions except Section 16, which concerns elevators. The California Court of Appeal for the Fourth Appellate District, however, entered a stay order on December 19, 1977, which deferred enforcement of Order 1–76 until the Court of Appeal could complete its review of the lower court action. *California Manufacturers Association v. Industrial Welfare Commission*, 4 Civ. No. 19582 (Ct.App., Dec. 19, 1977) (order granting stay). That review was completed on March 5, 1979, while the summary judgment motions in the present cases were pending before this court. The Court of Appeal reversed the trial court, and ruled that Order 1–76 was void and unenforceable because the IWC had failed to conduct an investigation mandated by. the California Labor Code. *Id.* (Ct.App., March 5, 1979). Due to the basis of its holding, the Court of Appeal did not find it necessary to reach the preemption issues. The California Supreme Court has recently granted the defendants' petition for certiorari. *California Manufacturers Association v. Industrial Welfare Commission*, No. LA 31122 (May 24, 1979) (order granting certiorari).

At present, therefore, the IWC is neither enforcing nor threatening to enforce Order 1–76, and plaintiffs, United States Steel and Kaiser, are neither suffering nor threatened with injury on account of that order. While it is true that if the California Supreme Court reverses the Court of Appeal, or if the IWC brings itself into compliance with the state Labor Code and reissues the regulations contained in 1–76, plaintiffs may again be faced with regulations they consider unlawful, this court has concluded that the intervening state court rulings have mooted the present actions.

The doctrine of mootness has been used with reference both to the constitutional requirement that a justiciable case or controversy be present throughout the course of litigation and to the discretion which the courts have to withhold certain forms of relief. Cases found moot are generally those in which there once existed an Article III case or controversy, and in which judicial remedies once appeared meaningful possibilities, but in which subsequent events have either destroyed the existence of a justiciable controversy *or* have rendered any possible judicial remedies meaningless. *See generally* 13 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure: Jurisdiction* § 3533, at 263–70 (1975).

Court decisions dealing with the mootness doctrine have not produced clear distinctions between mootness as a constitutional matter and mootness as a discretionary matter reflecting remedial considerations. It is recognized, however, that the courts possess discretion in certain cases to withhold injunctive relief on the ground of mootness although a constitutional case or controversy does exist. *See United States v. W. T. Grant*, 345 U.S. 629, 633, 73 S.Ct. 894, 97 L.Ed. 1303 (1953). The same holds true with respect to declaratory relief. *See A. L. Mechling Barge Lines v. United States*, 368 U.S. 324, 330–31, 82 S.Ct. 337, 7 L.Ed.2d 317 (1961). Moreover, it seems clear that "[t]he core of both Article III and remedial doctrines . . . is a search for the possibility that granting a present determination of the issues offered, and perhaps the entry of more specific orders, will have some effect in the real world." 13 C. Wright, A. Miller & E. Cooper, *supra* at 270.

Whether or not the present actions continue to be live controversies in the Article III sense following the state Court of Appeal rulings, dismissal for mootness is proper here because the requested injunctive and declaratory relief are no longer necessary or appropriate at this time. The injunctive relief plaintiffs have requested,

---

1. Also challenged in the state court action were three other IWC orders: Order 3–76, Order 4–76 and Order 8–76. These orders are substantially similar to Order 1–76, except that they apply to different industries or occupations.

that of enjoining defendants from enforcing any provision of Order 1–76 against them, is no longer needed because that result has already been mandated by a state court order. *Cf. Detroit Fire Fighters Association, Local No. 344 v. Dixon,* 572 F.2d 557, 559 (6th Cir. 1978) (state court injunctions based on state law grounds accomplished the same result sought on federal constitutional grounds in federal court, and thereby mooted the need for a federal court order). Issuance of the requested injunction would have no meaningful real world effects.

Although additional considerations are implicated in determining mootness of the request for declaratory relief, that relief is likewise unnecessary. There is no indication that promulgation of the allegedly unlawful state regulations has any continuing or present impact which declaratory relief could address. Furthermore, the threat of recurrence is not so great nor is it so immediate as to require resolution of the preemption issues at this time. Although as a general rule a case will not be considered moot "where the controversy is 'capable of repetition, yet evading review'," *Skokomish Indian Tribe v. General Services Administration,* 587 F.2d 428, 433 (9th Cir. 1978) (quoting *Southern Pacific Terminal Co. v. I. C. C.,* 219 U.S. 498, 515, 31 S.Ct. 279, 55 L.Ed. 310 (1911)), and although the present controversy is certainly capable of repetition if the California Supreme Court validates Order 1–76 on appeal or if the IWC reissues the regulations in accordance with required procedures, this controversy is not such as could evade effective review. *Cf., e. g., Chinese for Affirmative Action v. Leguennec,* 580 F.2d 1006, 1009 (9th Cir. 1978) (although dispute over city's past compliance with Voting Rights Act Amendments of 1975 was moot, current compliance is or may be a controversy capable of repetition yet evading review), *cert. denied,* 439 U.S. 1129, 99 S.Ct. 1047, 59 L.Ed.2d 90

(1979). For if Order 1–76 or its equivalent is validated or reissued, plaintiffs will be in a position to seek relief in federal district court on preemption grounds by way of a newly filed action. There is no reason to believe that whatever harm or threat of harm validation or reissuance of these allegedly unlawful regulations might involve could not be fully corrected by way of such an action, and the costs involved in filing a new action would be *de minimis.* It is also worth emphasizing that substantial duplication of the parties' efforts in these actions, as well as waste of judicial energies, could be avoided by resort to the provisions of Local Rule 205–2, which permits assignment of related cases[2] to a single judge where economies are likely to result. Thus, if plaintiffs were to file a new action against the IWC based on Order 1–76 or its equivalent, it would not be necessary to familiarize another judge with the facts and legal doctrines of this dispute provided the new action were found related to the present actions.

For the foregoing reasons, it is hereby ordered that these actions shall be dismissed as moot, with each party to bear its own costs. Judgment shall be entered accordingly. This dismissal shall not prejudice the rights of plaintiffs to seek relief in federal district court in the event that Order 1–76 or its equivalent is validated by the state courts or reissued by the IWC.

---

2. The rule specifically provides that a case may be related to another case which has been dismissed or otherwise terminated.