A. L. MECHLING BARGE LINES, INC., ET AL. *v.*
UNITED STATES ET AL.

No. 41. Argued November 8–9, 1961.—Decided December 18, 1961.

*Edward B. Hayes* argued the cause and filed briefs for appellants.

*Daniel M. Friedman* argued the cause for the United States and the Interstate Commerce Commission, appellees. With him on the brief were *Solicitor General Cox, Assistant Attorney General Loevinger, Acting Assistant Attorney General Kirkpatrick, Richard A. Solomon, Lionel Kestenbaum, Robert W. Ginnane* and *H. Neil Garson.*

*Donald M. Tolmie* argued the cause for intervening railroads. With him on the briefs were *Edward A. Kaier, Robert H. Bierma, James M. Souby, Jr.* and *James E. Steffarud.*

MR. JUSTICE BRENNAN delivered the opinion of the Court.

In December 1958 the appellee railroads published and filed with the Interstate Commerce Commission tariffs establishing through combination rates, from grain producing areas in Northern Illinois to certain Eastern destinations, which were lower than local or flat rates for the same commodities from Chicago to the same destinations. Since these tariffs would be in violation of the long- and short-haul provisions of § 4 (1) of the Interstate Commerce Act,[1] the railroads simultaneously applied for the

---

[1] 24 Stat. 380, as amended, 49 U. S. C. § 4 (1):

"It shall be unlawful for any common carrier subject to this chapter or chapter 12 of this title to charge or receive any greater compensation in the aggregate for the transportation of passengers, or of like kind of property, for a shorter than for a longer distance over the same line or route in the same direction, the shorter being included within the longer distance . . . ."

administrative relief which is authorized by the first proviso to § 4 (1).[2]   Timely protests were filed by the appellant barge lines, alleging that the proposed railroad rates threatened the extinction of legitimate competition by water carriers for the traffic from the producing areas into Chicago.   On January 9, 1959, Division 2 of the Commission entered Fourth Section Order No. 19059, authorizing the proposed railroad rates—although expressly withholding approval of them—pending further Commission action.[3]   The Order was entered before any hearing had been held or investigation completed, and the Division did not set out any findings.   On the same day, Division 2 ordered that an investigation be instituted with respect to the lawfulness of the rates.[4]

Pending final Commission determination as to whether permanent Fourth Section relief was warranted, and after Order 19059 had been in effect for 10 months, the appellant barge lines filed the action of which review is presently sought, in the District Court for the Eastern District of Missouri.   The complaint was based in part on the statutory procedure for review of Interstate Commerce

---

[2] *"Provided,* That upon application to the Commission and after investigation, such carrier, in special cases, may be authorized by the Commission to charge less for longer than for shorter distances for the transportation of passengers or property, and the Commission may from time to time prescribe the extent to which such designated carriers may be relieved from the operation of the foregoing provisions of this section, but in exercising the authority conferred upon it in this proviso, the Commission shall not permit the establishment of any charge to or from the more distant point that is not reasonably compensatory for the service performed; and no such authorization shall be granted on account of *merely potential water competition not actually in existence . . . ."*

[3] Fourth Section Order No. 19059, Jan. 9, 1959, Grain and Grain Products from Illinois to the East.

[4] Docket No. 32790, Jan. 9, 1959, Corn, Oats, Soybeans—Illinois to the East.

Commission orders,[5] and it prayed the court to set aside Order 19059 on the ground that the Commission lacked power to grant Fourth Section relief as to protested tariffs without first completing a full investigation, holding an adversary hearing, and making explicit findings that the statutory criteria for the granting of such relief had been met.[6] The complaint also sought relief under the Declaratory Judgment Act[7] and under the judicial review provisions of the Administrative Procedure Act;[8] the complaint alleged that the challenged administrative practice was a continuing one, and prayed for a declaration that that practice was beyond the powers of the Commission.

Pending the determination of the action, the railroads eliminated the long-haul short-haul discrimination from their rates and notified the Commission by letter of their withdrawal of the Fourth Section application respecting which Order 19059 had granted temporary relief. Hav-

---

[5] Jurisdiction to enjoin and set aside orders of the Interstate Commerce Commission is conferred on the District Courts by 28 U. S. C. § 1336. Section 1398 locates venue in the district of the plaintiff's residence or principal office. Section 2322 makes the United States a nominal defendant, § 2323 authorizes the intervention of the Commission or of any interested party, and § 2325 requires such actions to be heard and determined by a three-judge court.

[6] The complaint alleged that the statutory requirement that the rate for the longer haul be "reasonably compensatory" had, by authoritative administrative gloss, been imbued with four distinct criteria, namely, that a rate so described must

"(1) cover and more than cover the extra or additional expenses incurred in handling the traffic to which it applies; (2) be no lower than necessary to meet existing competition; (3) not be so low as to threaten the extinction of legitimate competition by water carriers; and (4) not impose an undue burden on other traffic or jeopardize the appropriate return on the value of carrier property generally, as contemplated in section 15a of the act."

[7] 28 U. S. C. §§ 2201, 2202.

[8] 60 Stat. 243, 5 U. S. C. § 1009.

ing intervened as defendants in the pending lawsuit, the railroads, together with the Commission, then moved for dismissal of the action on the grounds, *first,* that as to the prayer for annulment of Order 19059 the withdrawal of the Fourth Section application had rendered the cause moot; and, *second,* that the District Court lacked jurisdiction to grant a declaratory judgment.[9]  The District Court granted the motions to dismiss.  188 F. Supp. 386. The barge lines then perfected this appeal under 28 U. S. C. § 1253, and we postponed decision as to our jurisdiction until hearing on the merits.  365 U. S. 865.

We are, of course, in any event empowered and obliged to determine the jurisdictional questions in deciding whether the District Court correctly dismissed the case. And that is necessarily our initial inquiry on this appeal. Appellants do not deny that Order 19059 is presently devoid of practical effect, inasmuch as the Fourth Section application to which it relates has been withdrawn.  Still, they insist that the case is neither moot nor inappropriate for the granting of declaratory relief.

*First,* appellants assert in their brief that they "have a continuing interest in having F. S. O. 19059 vacated since it would be a defense to any action by appellants against the railroads for damages suffered from the railroads' fourth section departure rates."  Appellants point, in this connection, to certain of our decisions [10] which suggest

---

[9] As to lack of jurisdiction to grant a declaratory judgment it was argued not only that there was no "actual controversy" within the meaning of 28 U. S. C. § 2201, but also that the statutory provisions set forth in note 5, *supra,* which incorporate no provision for declaratory relief, provide the exclusive mode of judicial review of Interstate Commerce Commission orders.

[10] *Lambert Run Coal Co.* v. *Baltimore & Ohio R. Co.,* 258 U. S. 377 (shipper's action to compel allotment of cars in contravention of I. C. C. rules must be brought in federal court pursuant to statutory review procedure); *Venner* v. *Michigan Central R. Co.,* 271 U. S. 127 (stockholder's suit to enjoin railroad from acquiring equipment as

to them that they will be precluded from attacking Order 19059 collaterally and that the order must be set aside, if at all, by statutory direct review.

In *United States* v. *Munsingwear, Inc.*, 340 U. S. 36, this Court expressed the view that a party should not be concluded in subsequent litigation by a District Court's resolution of issues, when appellate review of the judgment incorporating that resolution, otherwise available as of right, fails because of intervening mootness. We there held that that principle should be implemented by the reviewing court's vacating the unreviewed judgment below.[11] We think the principle enunciated in *Munsingwear* at least equally applicable to unreviewed administrative orders, and we adopt its procedure here. The District Court should have vacated the order which it declined to review.[12] Since our disposition rests solely

---

authorized by I. C. C. order must be brought in federal court pursuant to statutory review procedure) ; *Callanan Road Co.* v. *United States*, 345 U. S. 507 (authority of I. C. C. to amend certificate cannot be raised collaterally in proceeding to interpret amended certificate).

[11] Such has been the long-standing practice of this Court in civil cases. See *United States* v. *Munsingwear, Inc.*, 340 U. S. 36, 39–40, n. 2; *Cozart* v. *Wilson*, 352 U. S. 884. In *Atchison, T. & S. F. R. Co.* v. *Dixie Carriers, Inc.*, 355 U. S. 179, this Court, having been apprised that the temporary Fourth Section relief order there under attack had been superseded and mooted by a subsequent Commission order, vacated the District Court's judgment and remanded with directions to dismiss the complaint—thus · leaving the challenged administrative order unannulled. We do not consider that case to have established any precedent demanding our adherence here, since all the parties there joined in representing to the Court that the challenged order "is now only of academic interest." Memorandum Suggesting That the Cause is Moot, p. 3.

[12] In their letter informing the Commission of the withdrawal of their Fourth Section application, the railroads expressed their understanding that "the temporary Fourth Section Orders issued in response to this Application will be cancelled and the authority discontinued."

on the mootness occasioned by the railroads' elimination of the long-haul short-haul discrimination, it is not to be taken as foreclosing determination, on any appropriate future occasion, as to (a) whether the Commission was empowered to enter Order 19059 utilizing the procedures it did; (b) whether Order 19059 was effective to authorize the Fourth Section departures to which it related; or (c) whether the pendency of Order 19059 establishes a defense for the railroads if the appellants carry out their intention expressed to us to predicate a damage suit against the railroads on the alleged violation of the statute. Of course, we here intimate no view as to whether there may exist a cause of action for damages in favor of a competing carrier predicated on a Fourth Section departure.

*Second,* appellants assert in their brief that since "the . . . practice of the Commission in granting 'temporary' authority for Fourth Section departures to the Railroads over the protests of the appellants and without any hearing or findings in the order granting such authority" is a "continuing" one, there is presently an actual controversy within the jurisdiction of the Court to resolve by declaratory judgment.[13]

We think it significant on this aspect of the case that the Commission has, on this appeal, conceded that it is obliged to make findings and that the challenged order is fatally defective because no supporting findings were made. The Commission further represents that it has amended its practice accordingly. It thus appears that one of the "continuing" practices whose validity appel-

---

[13] Appellants state that on several previous occasions judicial review of the practice which they challenge has failed because of intervening mootness occasioned either by the withdrawal of applications, citing *Coastwise Line* v. *United States,* 157 F. Supp. 305; *American Commercial Barge Line Co.* v. *United States,* Civ. No. 11772 (S. D. Tex. 1959), or by superseding Commission orders, citing *Atchison, T. & S. F. R. Co.* v. *Dixie Carriers, Inc.,* 355 U. S. 179.

lants would have us adjudicate continues no longer. Nor would it be appropriate to decide at this juncture whether the Commission is required to hold an evidentiary hearing prior to granting "temporary Fourth Section relief." Despite the Commission's present insistence that it is not so required, experience with its newly adopted practice of making findings in respect of all protested Fourth Section Orders may lead the Commission to provide for a hearing—at least under some circumstances.

Declaratory judgment is a remedy committed to judicial discretion. Nor need this Court first have the view of a lower court before it may decide that such discretion ought not be exercised. *Public Service Comm'n* v. *Wycoff Co.,* 344 U. S. 237. We think that sound discretion withholds the remedy where it appears that a challenged "continuing practice" is, at the moment adjudication is sought, undergoing significant modification so that its ultimate form cannot be confidently predicted. We do not, therefore, reach the possibly difficult questions whether appellants' challenge to the Commission's "continuing practice" gives rise to an actual controversy, or whether the District Court was on these pleadings otherwise possessed of jurisdiction to render a declaratory judgment.[14]

The order of the District Court dismissing the complaint is modified to provide that the proceedings are remanded to the Interstate Commerce Commission with direction to vacate and set aside Order 19059.

*It is so ordered.*

MR. JUSTICE CLARK, with whom THE CHIEF JUSTICE, MR. JUSTICE BLACK and MR. JUSTICE DOUGLAS join, dissenting.

Believing that an actual controversy still exists in this case, I cannot agree that it is moot. In my opinion, the

[14] See note 9, *supra.*

events occurring subsequent to the filing of this suit have not negated the necessity for a decision on the issues raised by the complaint, and I would vacate the dismissal of the three-judge District Court and remand the case to it with instructions to pass on these issues.

The complaint filed by appellant barge lines sought to set aside, for lack of statutorily required findings, a temporary order of the Commission permitting certain railroads to impose higher tariffs for the transportation of grain "for a shorter than for a longer distance over the same line or route." The complaint also asked for a declaration that it was unlawful under the Act for the Commission and the railroads to engage in a practice whereby such illegal temporary orders in a continuous series were utilized to by-pass the long- and short-haul provisions of § 4 (1) of the Act. The railroads in question intervened in the case shortly after the complaint was filed. The issues raised by the complaint are two-fold: (1) the validity of the temporary order, and (2) the validity of the alleged continuing practice used against appellants.

The three-judge District Court thought that the elimination by the railroads of the long-haul short-haul discrimination, accompanied by the withdrawal of the application which had sought permission for such discrimination, left the decision as to the validity of the temporary order a meaningless issue. This overlooks the fact that the validity of this order is still an actual controversy between the appellants and the intervening railroads. Neither the concession of invalidity by the Commission nor the vacation of the order pursuant to the Court's opinion is determinative of the order's validity. Upon the determination of this issue rests the ability of the appellants to collect damages occasioned by the tariffs used by the railroads pursuant to the temporary order, assuming that a plausible theory of liability exists (a

question which I need not now decide). For authority indicating that the validity issue is saved from mootness by the possibility that the order may "be the basis of further proceedings," see *Southern Pacific Terminal Co.* v. *Interstate Commerce Comm'n,* 219 U. S. 498, 515 (1911). Moreover, I note the fact that appellants would not be barred from challenging the order in a later suit—the point relied upon by the majority in affirming—does not render the issue moot in this case.

If the only need for a decision on the validity of this temporary order were to aid a suit for damages which *might* possibly be brought, I might not formally take issue with the decision below and its affirmance by my Brethren. However, because of the second issue raised by the complaint,[1] *i. e.*, an alleged circumvention of the Act by the utilization of a continuous stream of such temporary orders, the validity of this order, as well as the practice which gave birth to it, is presently disputed in this very case.

The continuing practice of which the appellants complain consists of an application by the railroads for an order permitting the imposition of a lower tariff for a long-haul than is charged for a short-haul over the same line; the issuance by the Commission of a temporary order without the necessary findings required by § 4 (1); the maintenance of such temporary order as long as possible by delaying the final disposition of the application; and the withdrawal or vacation of such order whenever a judicial test of its validity appears imminent, thereby frustrating any review on the ground of mootness. It is claimed that by continually repeating this process the railroads and the Commission have kept in effect an

---

[1] It could be argued that even if the continuing practice was not an issue in the case, its existence could be considered in determining whether the case is moot. See *Southern Pacific Terminal Co.* v. *Interstate Commerce Comm'n,* 219 U. S. 498 (1911).

illegal tariff for transportation by rail to the damage of the competing barge lines.

The lower court, although recognizing that the continuing practice issue was before it, felt that this question did not present a justiciable controversy. The opinion of the Court affirms this result by saying that regardless of whether this question presents an actual controversy, it is sound judicial discretion to withhold any relief because the Commission has renounced *before this Court* the challenged practice. It appears that the Court has placed itself in the dubious position of upholding a discretion that was never exercised on a ground that was never presented. I am mystified by the tactic which in effect exercises a discretion committed initially to the trial court in order to avoid deciding "possibly difficult questions" properly before this Court.

In my view the complaint as interpreted and applied by the court below raises an actual controversy as to the validity of the alleged practice.[2] Even though there is a controversy, the court below in the exercise of its discretion might decide that no relief, either injunctive or declaratory, is called for; however, I do not feel that the intervening partial repentance by the Commission compels the lower court to refuse relief. Rather I would think that the Commission's representation is only one fact to be considered along with all the other circumstances which appellants' affidavits indicate they would

---

[2] Analysis of the complaint reveals that appellants alleged the Commission "still follows the practice of entering such orders without supporting findings." It was requested that "the absence of any power and authority in the Commission to enter temporary fourth-section orders prior to a hearing, and to enter them without supporting findings, be definitely established." Also, appellants noted that the validity of the Commission's temporary order might become moot by the entry of a final order, "just as other cases in which similar relief has been sought have become moot before the issues could be determined by the Supreme Court."

show if afforded the opportunity.[3] Furthermore, the court below might take note of preceding cases which indicate that the railroads have played hanky-panky with their rates for years in an effort to attract freight away from the waterways.[4]

To sum up, at the time this case was dismissed as moot there was a charge that the Commission and the railroad intervenors were following a practice of using illegal "temporary" orders to frustrate the purpose of Congress to have the Act "so administered as to recognize and preserve the inherent advantages" of "all modes of transportation subject [thereto]. . . ." Based on this practice the appellants prayed that the temporary orders and the continuous practice be declared illegal and enjoined and for other appropriate relief. Under the record here presented, I am convinced that there is a controversy which if heard could be amenable to judicial relief. I would vacate the dismissal and remand the case to the court below for its consideration of the issues raised and for its decision thereon, including whether, in the exercise of *its* discretion, any injunctive or declarative relief is

[3] Such other factors would include evidence that, in 1958–1959 alone, the water carriers had protested eight other separate and distinct § 4 relief applications in which temporary orders similar to that involved here were sought and obtained; that in over a year only one of these applications had been formally acted upon by the Commission; that two of these applications were withdrawn in the face of pending tests; that five of these applications are still awaiting final decision before the Commission with temporary orders having been in effect for over one and a half years; that these temporary rates were avowedly designed by the railroads to divert freight from the water carriers; and that as a result the water carriers lost thousands of tons of grain shipments per year.

[4] *Interstate Commerce Comm'n* v. *Mechling*, 330 U. S. 567 (1947); *Interstate Commerce Comm'n* v. *Inland Waterways Corp.*, 319 U. S. 671, 692–703 (dissenting opinion) (1943). Also see cases cited note 13 of the Court's opinion.

called for; and with the further instruction, in accordance with the practice utilized in *Bryan* v. *Austin,* 354 U. S. 933 (1957), that upon appellants' request they be granted leave to amend their pleadings to meet the changed condition of the case as brought about by the Commission's intervening concession that its order was void, as well as its renouncement of the challenged practice. Indeed, some of our cases indicate that if appellants at that time chose to assert their cause of action for damages, that too might be included in such amendment, in which event that claim would be heard by a single judge of the three-judge court. Compare *Bryan* v. *Austin, supra; Public Service Comm'n* v. *Brashear Freight Lines,* 312 U. S. 621 (1941).