LIBRARY PUBLICATIONS, INC. d/b/a
"Running Press"

v.

DOUBLEDAY & COMPANY, INC.

Civ. A. No. 76–537.

United States District Court,
E. D. Pennsylvania.

June 21, 1976.

Nelson E. Kimmelman, Philadelphia, Pa., for plaintiff.

Timothy C. Russell, Philadelphia, Pa., for defendant.

## MEMORANDUM

GORBEY, District Judge.

This is an action brought initially by Library Publications, Inc., d/b/a "Running Press" (hereinafter "Running Press"), against Doubleday & Company, Inc. (hereinafter "Doubleday"), for a declaratory judgment pursuant to 28 U.S.C. § 2201. Running Press has been publishing a small paperback leaflet entitled "Running Press Metrics Made Simple". Doubleday has, since at least 1960, published a series of books whose titles range from "Accounting Made Simple" to "Zoology Made Simple". A list of said titles is annexed to Doubleday's answer and counterclaim. Running Press has requested a declaratory judgment from this court stating that it is not infringing any alleged common law trademark of Doubleday. Doubleday has filed a counterclaim in this action alleging a violation of its trademark rights by Running Press. Doubleday has also filed another trademark infringement action in the United States District Court for the Southern District of New York.[1] Jurisdiction of this matter is predicated on diversity of citizenship, 28 U.S. § 1332, Running Press being a Pennsylvania corporation with its principal

---

1. *Doubleday & Company, Inc. v. Running Press,* C.A. No. 76 Civ. 940.

place of business in Philadelphia, and Doubleday being a New York corporation with its principal place of business in New York.

On April 9, 1976, Running Press filed a motion to stay Doubleday from proceeding in the New York action, and Doubleday filed a motion to dismiss this action, or in the alternative, stay it or transfer it to the Southern District of New York pursuant to 28 U.S.C. § 1404(a), for the convenience of parties and witnesses. A hearing was held on these motions on June 15, 1976.

Doubleday has argued that whether or not a court has jurisdiction under the Declaratory Judgments Act is within the discretion of the court. *Mechling Barge Lines v. United States*, 368 U.S. 324, 331, 82 S.Ct. 337, 7 L.Ed.2d 317 (1961). With this argument I do not disagree. However, by their motions it is apparent that both parties agree that both actions should not proceed simultaneously. As plaintiff phrased it: ". . . it would be a dissipation of judicial resources and wasteful of money to have two litigations proceeding simultaneously in two different judicial districts." What I must determine is, in which court should the action proceed and in which court should the action be terminated.

Doubleday's answer to the complaint in this action contained a counterclaim for the alleged trademark infringement which it claims in the New York action. Therefore, it is apparent that the cases are identical, and all issues can be resolved in either court. For this reason, the fact that one case was started as a declaratory judgment action and the other as a trademark infringement action should not be determinative herein.

Running Press filed its action four days prior to the day upon which Doubleday filed its action. In fact, Doubleday filed the New York action on the day it was advised by counsel for Running Press that Running Press had filed suit. Running Press argues that there is ample authority for a stay of a subsequently filed proceeding in favor of the earlier filed case. *Gluckin & Co., Inc. v. International Playtex Corp.*, 407 F.2d 177 (2d Cir. 1969). Doubleday does not dispute such authority, but argues that Running Press has engaged in "Race to the Courthouse tactics" and therefore should not be given preference of forum, especially since its case was filed within one week of Running Press's case. Although I was not convinced that Running Press was guilty of such tactics, I decided that it would be more equitable in these proceedings to decide the motions on the basis of which court is more convenient to the parties and potential witnesses, as was suggested by Doubleday.

■ Running Press is a relatively small corporation, based in Philadelphia and employing only five full-time employees, all of whom live in Philadelphia or its nearby suburbs. Running Press's officers and principal shareholders are among those five employees. Running Press's art director, printer, bindery, packer and truckers also are all located in or near Philadelphia. Larry Teacher, one of the two main principals of Running Press, testified that he travels to New York approximately two evenings a year for business purposes, and never for social purposes. Running Press's only other contact with New York is that it has approximately three sales representatives around New York City, which sales representatives solicit orders for other companies besides Running Press. Running Press employs such sales representatives throughout the country. Of course, through this procedure, Running Press distributes its product in New York as is alleged by Doubleday.

Doubleday has its principal place of business in New York, but is also registered to do business in Pennsylvania, having offices at 123 S. Broad Street, in Philadelphia. Doubleday presented no direct evidence at the hearing bearing on convenience to the parties and witnesses, electing instead to rely on its previously filed briefs and an affidavit filed by its New York attorney. In these papers Doubleday failed to indicate any specific witnesses who might testify in this matter. Doubleday did state that its executive offices are in New York, and that it believes New York to be the center of the publishing industry. The aforementioned

affidavit dealt only with Running Press's alleged "Race to the Courthouse tactics" which has previously been discussed.

■ Under 28 U.S.C. § 1404(a), the transfer of an action to a district in which it might ordinarily have been brought may be ordered "for the convenience of parties and witnesses, in the interest of justice." In acting upon a transfer motion, a district court is vested with a "wide discretion". *Plum Tree, Inc. v. Stockment,* 488 F.2d 754, 756 (3d Cir. 1973). "The most significant factor to be considered is the convenience of party and non-party witnesses." *Saminsky v. Occidental Petroleum Corp.,* 373 F.Supp. 257, 259 (S.D.N.Y.1974). As the discussion above makes clear, the balance of inconvenience leads me to decide, in my discretion, to deny Doubleday's motion for transfer and to grant Running Press's motion to stay further proceedings in the New York action.

In sum, it is my determination that all the relief sought by the parties could be afforded them in either the Eastern District of Pennsylvania or the Southern District of New York. Cf. *Crosley v. Westinghouse,* 130 F.2d 474 (3d Cir. 1942). The balance of convenience dictates that the matter should proceed in Pennsylvania and not in New York. *Plum Tree, Inc. v. Stockment, supra; Saminsky v. Occidental Petroleum Corp., supra.* Should I deny the injunction sought by Running Press, I would be abusing my discretion. Cf. *Crosley Corporation v. Hazeltine Corporation,* 122 F.2d 925 (3d Cir. 1941).