UNITED STATES of America, Plaintiff,

v.

ESSO STANDARD OIL COMPANY (Puerto Rico), The Shell Company (Puerto Rico) Limited, Texaco Puerto Rico, Inc., The Yates Company, Inc., Tropigas De Puerto Rico, Inc., and The Pipelines of Puerto Rico Inc., Defendants.

Civ. No. 83-1479CC.

United States District Court,
D. Puerto Rico.

March 20, 1984.

Daniel F. López-Romo, U.S. Atty., Francisco Besosa, Asst. U.S. Atty., Hato Rey, P.R., Ronald G. Gluck and Lawrence W. Puckett, Attys., Dept. of Justice, Land and Natural Resources Div., Washington, D.C., for plaintiff.

Otto M. Bustelo-Garriga, San Juan, P.R., Robert G. Abrams and Jay A. Stephens, Howrey & Simon, Washington, D.C., Miguel P. Cancio-Bigas, Hato Rey, P.R., for Esso Standard Oil Company (Puerto Rico).

Ana M. Nin-Torregrosa, McConnell, Valdes, Kelley, Sifre, Griggs & Ruiz-Suria, San Juan, P.R., for The Shell Co. (Puerto Rico) Ltd.

William Estrella, Igor Domínguez and Edwin Hernández, San Juan, P.R., Robert G. Abrams and Jay A. Stephens, Howrey & Simon, Washington, D.C., for Texaco Puerto Rico, Inc., The Pipelines of Puerto Rico, Inc., The Yates Co., Inc.

Nicolás Jiménez and Francisco Martin-Vélez, San Juan, P.R., Robert G. Abrams and Jay A. Stephens, Howrey & Simon, Washington, D.C., for Tropigas de Puerto Rico, Inc.

## OPINION AND ORDER

CEREZO, District Judge.

The defendant oil companies seek dismissal of this action for declaratory judgment brought by the United States of America on June 24, 1983 on the grounds that they previously filed before the United States Claims Court substantially identical claims, *Esso Standard Oil Co. (Puerto Rico), et al v. United States*, action No. 271–83C, that their suit before the Claims Court is their exclusive remedy since they seek monetary relief in excess of $10,000 and that, since all parties can obtain full relief from that court, considerations of equity and of judicial expediency dictate that we decline jurisdiction in the present action and dismiss the same. In its opposition against dismissal the United States charges that, even though the matter is now moot, it had raised earlier the need of joining the oil companies as codefendants in the case of *Commonwealth of Puerto Rico v. United States*, Civil No. 80–2079, that it is precluded from filing a counterclaim which seeks only a declaratory judgment before the Claims Court by its ruling in *Shippen v. United States*, 654 F.2d 45, 228 Ct.Cl. 137 (1981), that the oil companies did not expressly allege damages in excess of $10,000 in their complaint, and finally, that it cannot include the Commonwealth of Puerto Rico as a third party in the suit before the Claims Court under the rule set forth in *Bowser, Inc. v. United States*, 420 F.2d 1057, 190 Ct.Cl. 441 (1970). The United States sees no difficulty in requiring the oil companies to assert the claims they have pled in the Claims Court as counterclaims against it in this action. Both parties claim that the balancing of the equities

and considerations of judicial economy cast the vote in their favor.

As the Supreme Court cautions in *Public Service Commission of Utah v. Wycoff Co.*, 344 U.S. 237, 73 S.Ct. 236 at 240, 97 L.Ed. 291 (1952), "the propriety of declaratory relief ... will depend upon a circumspect sense of its fitness" and the court must "... see what legal issues it is deciding, what effect its decision will have on the adversaries, and some useful purpose to be achieved in deciding them." Given the pendency of the other action between the same parties before the Claims Court, a factor among others to be weighed in balancing competing interests, the Court must look to the pleadings contained in both suits in defining the issues. A central theme dominates both pleadings: the existence of a twenty-year lease contract between the defendants and the United States Government through the Department of the Navy, dating back to July 2, 1947 and renewed for a ten-year term that expired on July 2, 1977, which provided for the joint use and occupancy by the oil companies of the land and appurtenances constituting the Cataño Fuel Storage Facilities [1] and which established the right of the oil companies to construct permanent improvements on that property and the parties' conflicting views on whether the United States complied with paragraph 7–D of that contract which reads as follows: [2]

> [T]he government shall have the right at the expiration or termination of this contract, or within a reasonable time thereafter, to take title to all structures and improvements placed on the facilities by the companies, and will pay the value thereof to the companies. The value of such structures and improvements is to be determined on the basis of off-site salvage value less cost of restoration of the premises following removal. In the event no agreement can be reached as to the value of the structures and improvements, such value will be determined by

---

1. Also known as the Naval Storage Facilities.

2. Although the parties have not submitted a copy of the lease agreement, neither one has

challenged the other's quoting of the pertinent provision.

a court of competent jurisdiction in accordance with the laws governing the acquisition of such property upon the basis aforementioned.

Although the United States continuously earmarks its present action as one for declaratory judgment quieting title in its name to all improvements and structures made by defendants through those thirty years pursuant to the lease contract, the underlying factual basis rests entirely on the allegation that upon tendering checks in the sum of $1.00 to each of the six oil companies on July 14, 1977 as payment for the value of the improvements and structures it in effect tendered *full compensation* to each of the defendants for the improvements and structures made by them on the premises of the Cataño Fuel Storage Facilities and, upon doing so, acquired title to all structures and improvements thereof. The allegations of the government's complaint mirror those of the companies breach of contract action before the Claims Court in that the vital issue present in both is whether the $1.00 tendered in payment constituted full compensation under the definition of value of the improvements set forth in paragraph 7-D of the lease contract. That is the threshold question that must be answered in both cases. An affirmative response answers all other questions. A negative response would require an adjudication of what measure of compensation is due the oil companies for the improvements. Convinced as we are that there is identity of issues and given the fact that the Claims Court action was filed before, we must, in the exercise of our discretion, determine whether a useful purpose is served by pursuing this case and consolidating it, as requested by plaintiff, with two other suits presently before us in which the United States and the Commonwealth of Puerto Rico are presently engaged in a complex title dispute over other lands. We must also consider what remedies are available to the litigants in the Court of Claims in

comparison to the relief that could be dispensed here.

■ The Supreme Court has repeatedly expressed the view that "declaratory judgment is a remedy committed to judicial discretion," *A.L. Mechling Barge Lines, Inc. v. United States*, 368 U.S. 324, 82 S.Ct. 337, 342, 7 L.Ed.2d 317 (1961), thus rejecting the mandatory theory that would recognize an absolute right on the litigant to a judicial declaration under the Declaratory Judgment Act, 28 U.S.C. Section 2201. *Public Service Commission of Utah, supra*, 344 U.S. at page 239, 73 S.Ct. at page 238; *Eccles v. Peoples Bank of Lakewood Village, Cal.*, 333 U.S. 426, 68 S.Ct. 641, 92 L.Ed. 784. As an equitable remedy it engages the court in balancing needs and competing interests of the parties. In striking a balance, consideration is given to factors such as the public interest, existence of a pending action, cost and burden of duplicating proceedings, potential harm to claimant if the declaration is withheld, convenience, delay and certainty that the declaration will serve as a final determination of rights instead of encouraging piecemeal litigation. All this is summed up in the general rule "that the declaration is an instrument of practical relief and will not be issued where it does not serve a useful purpose." Borchard, Declaratory Judgment, Second Edition (1941), p. 307.

Turning to the particular circumstances of this case we have a party justifying the issuance of a declaration of title despite the pendency of an earlier action involving the same parties [3] and the same issues. It is claimed that procedural obstacles shortchange full consideration of its rights in that suit. Judicial expediency, seemingly linked to the two other actions in this court between the Commonwealth and the United States, is also invoked. To understand the backdrop of this argument it is necessary to look into the nature and the status of those two consolidated cases. Civil No. 80–2079 is an action to quiet title brought

---

**3.** The Yates Company, Inc. is the only defendant in this Court that is not a plaintiff in the case

brought by the oil companies.

by the Commonwealth of Puerto Rico against the United States of America and ten federal officials who are heads of federal agencies that occupy the lands to which title is claimed. That case originally involved four parcels of land, referred to in the amended complaint as "reverted lands," which were allegedly donated by the People of Puerto Rico pursuant to legislation enacted at the request of the United States prior to World War II for national defense purposes subject, however, to reversion clauses contained in each of the deeds of conveyance which provided that whenever said lands were not necessary for national defense they would automatically revert to the People of Puerto Rico. The quiet title action essentially charges that these lands are no longer necessary to national defense and that title has reverted to the Commonwealth of Puerto Rico. The United States has admitted an ownership interest in the subject properties and has denied their reversion to the Commonwealth. It filed counterclaims for damages and/or set-off charging unauthorized entry and occupancy by the Commonwealth or its agents of portions of the lands in dispute and improvements thereon. That case was consolidated with Civil 82–1313, an action for payment of monies allegedly owed by the Puerto Rico Ports Authority to the United States under a lease contract of one of the four properties involved in the quiet title action. The record of these consolidated cases comprises nine volumes, multiple parties and substantial economic interests. It is significant to note that the Cataño Fuel property that was leased by the United States to the oil companies in 1947 is the only parcel involved in the principal action between the two sovereigns as to which an agreement has been reached. On November 16, 1983 the Commonwealth and the United States filed a Stipulation of Settlement and Dismissal with Prejudice of Count I of the amended complaint in Civil No. 80–2079 which settled all adverse claims between them over the Cataño Fuel Storage Facility. Prior to this a Quitclaim

Deed was executed on November 2, 1983 by virtue of which the United States, as grantor, released and forever quitclaimed unto the Puerto Rico Land Authority, an agency of the Commonwealth, in consideration of the sum of $19,000,000.00 and the settlement of all claims concerning the Cataño property, all the tracts or parcels of land, with the buildings and improvements thereon, which encompass most of what is known as the Naval or Cataño Fuel Storage Facility. The improvements on that land are the sole source of dispute between the United States and the oil companies in this case and before the Claims Court. It was specifically stated in the deed that the United States did not guarantee the Commonwealth that it possesses clear title to the Cataño Fuel Storage Facility or to improvements and appurtenances located thereon.[4] The Commonwealth expressly agreed to waive all rights and claims against the United States for monetary compensation, reimbursement, contribution or damages arising from matters or disputes concerning title to or value of the lands within the boundaries of the Cataño (Naval) Storage Facility or improvements located upon those premises. It further agreed

to assume all liability for any and all claims by Esso Standard Oil Company (Puerto Rico), Texaco Puerto Rico, Inc., The Shell Company (Puerto Rico) Ltd., the Yates Company, Inc.; Tropigas de Puerto Rico, Inc. or the Pipelines of Puerto Rico, Inc. (these six parties are hereinafter referred to as third parties), including any of these third parties' predecessors or successors in interest [and] to indemnify and reimburse the Grantor for all monetary damages or compensation adjudged and expenses incurred in connection with any and all claims by the foregoing third parties against the Grantor ... regarding (a) title to or the value of the improvements or appurtenances, whenever and wherever constructed and/or located upon the Naval Storage Facility ... or (c) the

---

**4.** Page 11 of the Quitclaim Deed.

transactions, events, and/or claims that are the subject of Esso Standard Oil Company (Puerto Rico), et al, v United States of America, Action No. 271–83C, United States Claims Court, or which may also become the subject of any civil action in which the foregoing third parties present claims which involve the transactions, events, and/or claims that are the subject of Action No. 271–83, United States Claims Court....[5]

Pursuant to the stipulation which followed this deed, partial judgment was entered dismissing all claims having to do with the Cataño property in Civil No. 80–2079. On November 21, 1983 the United States filed a motion in the consolidated cases in which it informed that

since there is no longer a title dispute between the United States and the Commonwealth regarding title to the 4.42 acres within the boundaries of the Cataño Facility and the improvements thereon, joinder of the three oil companies (Esso, Texaco and Shell) all of which claim or may claim title to improvements they built on the subject 4.42 acres of the Cataño Facility is no longer necessary or appropriate in Civil No. 80–2079.

By this time the oil companies had already filed their complaint before the Claims Court,[6] Action No. 271–83C, against the United States charging that the value of the improvements constructed by them at the Cataño Fuel Facility exceeded the $1.00 tendered to each of them and seeking just compensation in the amount of the fair value of those improvements, plus damages for the alleged breach of the lease contracts. This action followed.[7] As stated, it basically seeks a declaration that the United States acquired title over the improvements when it tendered the $1.00 to each company and that this amount constituted full compensation. No mention is made of how the $1.00 compensation sum was arrived at or how it fits into the definition of

value in paragraph 7–d of the lease contracts, despite the lengthiness of the complaint and the significance of these elements to the theory of compensation. What is important, however, in deciding whether to dismiss, stay or pursue this action is that the two consolidated cases no longer have anything to do with this one. The constant references by the United States to past developments in those two actions are irrelevant and tend to confuse. The fact that the Commonwealth of Puerto Rico has an interest in the ongoing dispute between the United States and the oil companies over the value of the improvements located at the Cataño Fuel Storage Facility and a substantial stake in its outcome does not tie this case to its quiet title action No. 80–2079. This much was recognized by the United States in that action when it informed that the oil companies were no longer necessary after the Commonwealth purchased the improvements from it. At this stage the 1980 action involves a title dispute between the federal and the Commonwealth government over *other* lands. The Cataño Fuel Storage property and its improvements are no longer a part of that litigious situation. The overall determination of whether entering a declaratory judgment in this case will serve a useful purpose must, therefore, take into account only the parties, circumstances and interests at stake in this action and the Claims Court case. The interest of the Commonwealth of Puerto Rico is peripheral to the dispute between the United States and the oil companies. Our only concern as to that interest is whether the Commonwealth can protect it before the Claims Court. We have no quarrel with the argument raised by the United States that the *Bowser* decision, *supra,* precludes it from claiming against the Commonwealth as a third party in the case filed by the oil companies in the Claims Court.[8] The question is: Why

---

5. Pages 11–12 of the Quitclaim Deed.

6. Filed on April 27, 1983.

7. Filed on June 24, 1983.

8. At pages 8 and 9 of its Reply to Defendants' Opposition to Motion for Order Prohibiting Defendants from Pursuing their Claims before the United States Claims Court filed on October 12, 1983, it states:

should it? The Commonwealth has made binding representations to the United States set forth in the Stipulation filed by them in 80–2079 and in the Quitclaim Deed that it assumes liability for all claims by the oil companies, their predecessors and successors and that it shall reimburse and indemnify the United States for all monetary damages or compensation adjudged and expenses incurred in connection with any and all claims by the oil companies regarding title to or value of the improvements located at the Cataño Fuel Storage Facility or the claims that are the subject of the case filed by the companies in the Claims Court, Action No. 271–83C. At this stage the United States is merely speculating that the Commonwealth will not comply with. its obligations when it asserts the need to claim from it as a third party. Yet, even assuming that at a given moment it were compelled to claim from the Commonwealth reimbursement of any compensation that the Claims Court found to be due the oil companies should the Commonwealth fail to voluntarily reimburse, the United States has an effective mechanism that it can resort to immediately: seek compliance with the stipulation filed in Civil 80–2079 where the Commonwealth binds itself to do so.

■ Comparing this with the position of the oil companies we have a situation in which these cannot, as otherwise urged, file counterclaims against the United States in the declaratory action (Civil No. 83–1479) simply because they seek monetary relief in excess of $10,000. Where the relief sought against the United States exceeds $10,000, the Claims Court has exclusive jurisdiction and the same cannot be defeated or evaded by setting up the claim as a counterclaim in the District Court suit by the government. *United States v. 6.321 Acres of Land,* 479 F.2d 404 (1st Cir.1973). That the oil companies' claims exceed that amount is obvious and clearly alleged at paragraph 15 of their complaint before the Claims Court. The United States offers as a remedial alternative that "if this Court were to determine that the United States is liable to the companies and damages might exceed $10,000, the action could be transferred to the Claims Court for a determination on damages."[9] One of the relevant factors in determining whether a declaratory judgment will serve a useful purpose is certainty or uncertainty of final disposition. Again, comparing the Claims Court option with the District Court if either one decides that the $1.00 compensation to the oil companies in 1972 was all that was due them that would dispose of all other questions. However, if the ruling were adverse to the United States, the Claims Court would be empowered to fully adjudicate the companies' counterclaims by determining the amount of compensation owed to each of them. The same cannot be said of this Court for its declaration were favorable to the companies. The government's wait and see attitude, if adopted, would bar the companies from pursuing their claims against it in the Claims Court until such time as they prevail here. And even then it would have us embark on a jurisdictional inquiry to decide if the compensation award might be less than or in excess of $10,000. If it

While it appears that the PRLA and the Commonwealth could be 'noticed' to appear as parties with the right to voluntarily participate to protect their interests in the matter being litigated, see Rule 14(a)(1), Rules of the United States Claims Court; *Midwest Indus.* [*Paintin of Florida v. United States*], *supra,* 1 Cl.Ct. [209] at 211; *Bowser, supra,* 420 F.2d at 1060, it is questionable whether the Claims Court has jurisdiction to issue a judgment against either the PRLA or Commonwealth. Rule 14(a), R.U.S.C.C., cannot, of course, enlarge or extend the jurisdiction of the Claims Court. *Cf.* Rule 82, F.R.Civ.P. However, if the companies were to file a counterclaim against the United States in this action, the United States could file a third-party claim against the PRLA and the Commonwealth based upon the indemnity agreement pursuant to Rule 14(a), F.R.Civ.P. This Court could issue a judgment against the Commonwealth and the PRLA if it determined that the United States is liable to the companies and the PRLA and the Commonwealth are in turn liable to the United States for damages it owes to the companies. (Footnotes omitted.)

9. United States' Opposition to Motion of Esso, Texaco and Tropigas to Dismiss, filed on August 4, 1983, at page 24.

might exceed then this Court would vow to the exclusive jurisdiction of the Claims Court and send the oil companies, possibly years from now, scurrying off to pursue their monetary claims before that tribunal. While there is a 50% probability that the controversy between the United States and the oil companies will not come to an end in this case and that further litigation will be required, there is complete certainty that before the Claims Court all claims of the companies and all rights of the United States, through its defenses, can be raised and fully adjudicated. A comparison of the government's allegations in this declaratory action with those of the complaint filed by the companies before the Claims Court reveals that the former are defenses to the latter. "It serves no sensible end to permit (an) adversary to appear as equitable actor and start the proceedings for an autonomous declaration that he has a good defense to his opponent's pending or imminent action." Borchard, at 303.

Finally, we are mindful of the Commonwealth's substantial interest in the outcome of the litigation between the oil companies and the United States after purchasing the improvements and binding itself to reimburse the United States for any compensation adjudicated to the companies. This interest, however, can be adequately protected by the Commonwealth in the Claims Court action under the *Bowser* case [10] and Rule 14(a)(1), Rules of the United States Claims Court.

Accordingly, we hold that considerations of equity and judicial expediency tilt the balance towards staying this action until the United States Claims Court decides the case previously filed before it involving the same parties [11] and issues present in this case.

SO ORDERED.

---

**10.** The language of the statute plainly authorizes the court, on motion of the Government, to summon or notify a third party indemnitor, such as General Steel, to appear and assert its interest in the case. General Steel says that it has not asserted and does not intent to assert a claim against the United States in this action. However, we think it cannot be doubted that General Steel has, in the language of the statute, a 'possible' interest in the proceeding. Indeed, it has a direct pecuniary interest in the outcome, for if the Government is required to pay plaintiff damages as a result of infringing apparatus procured from General Steel, it may be required to pay such damages under the provisions of the indemnity contract. Consequently, such a third party indemnitor, summoned or noticed, may be made a party to the suit and has a right to participate in order to protect its interests. It may assist the United States in the defense of the case, or it may offer additional evidence on its own behalf and advance such legal contentions as it deems appropriate in the protection of its interest. *Bowser*, at p. 1060.

**11.** Since Yates Company, Inc. is a defendant in this action and is not a plaintiff in the Claims Court suit brought by the oil companies, a stay, not dismissal, is ordered.