**FREEPORT–McMoRAN OIL & GAS COMPANY, American Production Partnership–V, Ltd., and Ninian Oil Finance Corp., Petitioners,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent.**

**K N ENERGY, INC., Petitioner,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent.**

Nos. 90–1499, 90–1526.

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 7, 1991.

Decided April 24, 1992.

John T. Miller, with whom William F. Demarest, Jr., Adelia S. Borrasca and B.J. Becker were on the joint brief, for petitioners in Nos. 90–1499 and 90–1526.

John M. Cockrell, Atty., F.E.R.C., with whom William S. Scherman, Gen. Counsel, Jerome M. Feit, Solicitor, and Joseph S. Davies, Deputy Solicitor, were on the brief, for respondent.

Paul K. Sandness, Robert T. Hall, III and Stephen L. Huntoon were on the brief, for intervenor, Williston Basin Interstate Pipeline Co. in Nos. 90–1499 and 90–1526.

Adelia S. Borrasca and William F. Demarest, Jr., entered appearances, for petitioners, Freeport–McMoRan Oil and Gas Co., American Production Partnership–V, Ltd., and Ninian Oil Finance Corp. in No. 90–1526.

Before MIKVA, Chief Judge, SILBERMAN and RANDOLPH, Circuit Judges.

Opinion for the court filed by Chief Judge MIKVA.

---

MIKVA, Chief Judge:

This case is plainly moot. The challenged orders of the Federal Energy Regulatory Commission were superseded by a subsequent FERC order, and while the challenged orders were in effect petitioners suffered no injury this court can redress. At oral argument, for the first time, FERC's counsel said the Commission had no objection to petitioners' request that we vacate the challenged orders. Accordingly, we vacate them. *See Mechling Barge Lines v. United States,* 368 U.S. 324, 328–30, 82 S.Ct. 337, 340–41, 7 L.Ed.2d 317 (1961); *Northwest Pipeline Corp. v. FERC,* 863 F.2d 73, 76 (D.C.Cir.1988).

Ordinarily, we would handle such a matter in an unpublished order. We write, however, to express our displeasure with FERC counsel's failure to take easy and obvious steps to avoid needless litigation. We also pause to address FERC counsel's remarkable assertion at oral argument that government attorneys ought not be held to higher standards than attorneys for private litigants.

\* \* \*

K N Energy, a pipeline company and a petitioner here, gathers gas in Montana from three gas producers, Freeport–McMo-Ran, American Production Partnership, and Ninian Oil, the other petitioners. K N delivers the gas in Montana to the pipelines of Williston Basin Pipeline Company, which redelivers an equivalent volume of gas in Wyoming to K N for transport to end users. K N and Williston have a contract that governs the exchange of gas between them, a 20–year–old agreement approved by FERC and identified in Williston's tariffs as rate schedule X–3. K N and the producers maintain that the contract entitles K N to firm—rather than interruptible—service. Williston disagrees, and so, in the challenged orders, does FERC.

FERC issued the first of the challenged orders on August 17, 1990, accepting tariffs filed by Williston and finding that the X–3 contract service was essentially interruptible—that service to K N was superior to all other interruptible service, but subordinate to Williston's firm service. Two orders denying rehearing, issued September 20, 1990, and October 17, 1990, reaffirmed that decision. K N and the other petitioners petitioned for review in this court on October 22, 1990, five days after FERC issued the last denial of rehearing; petitioners filed their joint brief on schedule on July 19, 1991.

■ Meanwhile, FERC was considering an open-access tariff that Williston had filed in 1988. On July 23, 1991, a few days after petitioners filed their brief in this case, the Commission issued an order in that proceeding, finding again that K N's service was not firm. That open-access order superseded the earlier orders, meaning that the challenged orders governed the relationship between Williston and K N only from August 17, 1990, until July 23, 1991. During that period, K N purchased and received firm service from Williston under an agreement reached before FERC issued the first of the challenged orders. K N has refused to pay added charges for the firm service it has received from Williston, and Williston has filed a complaint with FERC seeking to recover those charges. But the priority of K N's service from Williston is appropriately resolved either upon review of FERC's open-access order (petitions for review are now pending), or in the complaint proceeding. Petitioners have not shown that they "have suffered some actual injury that can be redressed by a favorable judicial decision" in this court, and their challenge is therefore moot. *Iron Arrow Honor Society v. Heckler,* 464 U.S. 67, 70, 104 S.Ct. 373, 375, 78 L.Ed.2d 58 (1983).

Nevertheless, despite issuance of the open-access order, petitioners had reason to press ahead with their challenge to the superseded orders. Leaving the old orders on FERC's books might affect ongoing litigation between petitioners and Williston. Petitioners understandably wanted to render the challenged orders legally irrelevant—either by having this court reject them on the merits, or by having them vacated. To FERC, meanwhile, the challenged orders were meaningless and could painlessly be vacated, as FERC's counsel acknowledged at oral argument.

At several points before oral argument, FERC's counsel should have seen that vacating the orders would likely settle this litigation, saving time, energy, and money, allowing the parties to focus their attention on review of the open-access order, and allowing the court to focus on live cases and controversies instead of this moot one. Many lawyers would have seen the possibility of settlement as soon as FERC issued its open-access order, mooting the pending challenge. The ease of settlement became obvious when petitioners, in their reply brief, explained their concern that the unreviewed orders might prejudice their position in other litigation and asked the court to vacate the orders. Despite the benefits of settlement and the pointlessness of proceeding, FERC's counsel did not try to contact opposing counsel to explore whether vacating the orders would resolve the case; nor did FERC's counsel recommend that the Commission file a motion to have this court remand the orders so that FERC could vacate them unilaterally. FERC's counsel did not even disclose in the brief he drafted and filed with this court the Commission's position on vacating the challenged orders, leaving the impression that the Commission might oppose vacating them.

We understand that what seems obvious in hindsight might not have occurred at the time to a busy agency lawyer. We do not understand, however, FERC counsel's repeated insistence at oral argument that he had no obligation at all to take any of the steps we have mentioned. "I don't think we had to do that," counsel said in response to a suggestion that a phone call to opposing counsel might have put an end to the case; "the burden is on him." When a member of the panel submitted that counsel for a public agency has special obligations, FERC's counsel replied that "I think we can agree to disagree on that point." At the close of oral argument, FERC's counsel summed up his position: "All I can say is that I think you're holding us to a different standard here."

The notion that government lawyers have obligations beyond those of private lawyers did not originate in oral argument in this case. A government lawyer "is the representative not of an ordinary party to a controversy," the Supreme Court said long ago in a statement chiseled on the walls of the Justice Department, "but of a sovereignty whose obligation ... is not that it shall win a case, but that justice shall be done." *Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935). The Supreme Court was speaking of government prosecutors in *Berger*, but no one, to our knowledge (at least prior to oral argument), has suggested that the principle does not apply with equal force to the government's civil lawyers. In fact, the American Bar Association's Model Code of Professional Responsibility expressly holds a "government lawyer in a civil action or administrative proceeding" to higher standards than private lawyers, stating that government lawyers have "the responsibility to seek justice," and "should refrain from instituting or continuing litigation that is obviously unfair." MODEL CODE OF PROFESSIONAL RESPONSIBILITY EC 7–14 (1981).

Government lawyers, we have no doubt, should also refrain from continuing litigation that is obviously pointless, that could easily be resolved, and that wastes Court time and taxpayer money. "[T]he United States," as President Bush stated in an Executive Order, "sets an example for private litigation by adhering to higher standards than those required by the rules of procedure in the conduct of Government litigation in Federal court." Executive Order on Civil Justice Reform, 27 WEEKLY COMP. PRES. DOC. 1485 (October 23, 1991). The Executive Order, designed in part "to reduce needless litigation," requires government attorneys to attempt to settle cases whenever possible. *Id.* Although we express no views on the applicability of the Executive Order to counsel for administrative agencies, and although we think a government lawyer's obligation to avoid needless litigation precedes the Executive Order, the Order plainly propounds the very proposition FERC's counsel challenged at oral argument.

We stress, to conclude, that we are concerned not so much with the failings of FERC's counsel in this case, but with the underlying view of a government lawyer's responsibilities that counsel revealed at oral argument. We find it astonishing that an attorney for a federal administrative agency could so unblushingly deny that a government lawyer has obligations that might sometimes trump the desire to pound an opponent into submission.

The challenged orders are

*vacated.*