DIANA GRIBBON MOTZ, Circuit Judge,
dissenting as to Part V.B.:
We have held that in 2013, the General Assembly, acting with discriminatory intent, enacted a photo ID requirement to become effective in 2016. But in 2015, before the requirement ever went into effect, the legislature significantly amended the law. North Carolina recently held two elections in which the photo ID requirement, as amended, was in effect. The record, however, contains no evidence as to how the amended voter ID requirement affected voting in North Carolina. In view of these facts and Supreme Court precedent as to the propriety of injunctive relief, I believe we should act cautiously.
The Supreme Court has explained that “[a]n injunction is a matter of equitable discretion; it does not follow from success on the merits as a matter of course.” Winter v. Natural Res. Defense Council Inc., 555 U.S. 7, 32, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008); see also Weinberger v. Romero-Barcelo, 456 U.S. 305, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982). Given the “inherent limitation upon federal judicial authority,” a court’s charge is only to “cure the condition that offends the Constitution.” Milliken v. Bradley, 433 U.S. 267, 282, 97 S.Ct. 2749, 53 L.Ed.2d 745 (1977) (internal quotation marks omitted).
If interim events have “cured the condition,” id. and a defendant carries its “heavy burden” of demonstrating that the wrong will not be repeated, a court will properly deny an injunction of the abandoned practice. United States v. W.T. Grant, 345 U.S. 629, 630-33, 73 S.Ct. 894, 97 L.Ed. 1303 (1953); see Kohl by Kohl v. Woodhaven Learning Ctr., 865 F.2d 930, 934 (8th Cir. 1989) (“A change in circumstances can destroy the need for an injunction.”). Thus, a defendant’s voluntary cessation of an unconstitutional practice or amendment of an unconstitutional law fundamentally bears “on the question of whether a court should exercise its power to enjoin” the practice or law. City of Mesquite v. Aladdin’s Castle, Inc., 455 U.S. 283, 288-89, 102 S.Ct. 1070, 71 L.Ed.2d 152 (1982).
The remedy for an unconstitutional law must completely cure the harm wrought by the prior law. But, a superseding statute can have that effect. See id. And, where a governmental body has already taken adequate steps to remedy an unconstitutional law, courts “generally decline to add ... a judicial remedy to the heap.” Winzler v. Toyota Motor Sales U.S.A., Inc., 681 F.3d 1208, 1211 (10th Cir. 2012); cf. A. L. Mechling Barge Lines, Inc, v. United States, 368 U.S. 324, 331, 82 S.Ct. 337, 7 L.Ed.2d 317 (1961) (“[Sjound discretion withholds the remedy where it appears that a challenged ‘continuing practice’ is, at the moment adjudication is sought, undergoing significant modification so that its ultimate form cannot be confidently predicted.”).
In 2015, two years after the enactment of the photo ID requirement, but prior to its implementation, the General Assembly added the reasonable impediment excep *243 tion to the photo ID requirement. See 2015 N.C. Sess. Laws 103 § 8. The exception provides that a voter without qualifying photo ID may cast a provisional ballot after declaring under penalty of perjury that he or she “suffer[s] from a reasonable impediment that prevents [him] from obtaining acceptable photo identification.” N.C. State Conf., —• F.Supp.3d at-, 2016 WL 1650774, at *36 (internal quotation marks omitted). No party in this case suggests that the legislature acted with discriminatory intent when it enacted the reasonable impediment exception.
The majority maintains, however, that the reasonable impediment exception does not fully remedy the impact of the photo ID requirement. Perhaps not. But, by its terms, the exception totally excuses the discriminatory photo ID requirement.[1] Of course, in practice, it may not do so. But on this record, I believe we cannot assess whether, or to what extent, the reasonable impediment exception cures the unconstitutional 2013 photo ID requirement.
Because the district court failed to find discriminatory intent, it did not consider whether any unconstitutional effect survived the 2015 amendment. Instead, it focused on whether the law, as amended in 2015, burdened voters enough to sustain claims under a § 2 results or an Anderson-Burdick analysis. Id. at -•, -, 2016 WL 1650774, at *122, *156. Of course, this is not the standard that controls or the findings that bear on whether a court should enjoin an unconstitutional racially discriminatory, but subsequently amended, law.[2]
Moreover, additional information now exists that goes directly to this inquiry. For after trial in this case, the State implemented the reasonable impediment exception in primary elections in March and June of 2016. The parties and amici in this case have urged on us anecdotal extra-record information concerning the implementation of the exception during the March election. For example, Amicus supporting the Plaintiffs reports that, in the March 2016 primary election, poll workers gave reasonable-impediment voters incorrect ballots and County Boards of Elections were inconsistent about what they deemed a “reasonable” impediment. See Br. of Amicus Curiae Democracy North Carolina in Support of Appellants at 8-32, N.C. State Conf., — F.3d-(4th Cir. 2016) (No. 16-1468). In response, the State maintains that “the vast majority” of these criticisms “are inaccurate or misleading,” in part because Amicus completed its report before the State conducted its final vote count. Appellee’s Resp. in Opp’n. to *244 Mot. for Stay of J. and Inj. Pending Appeal at 3-5, N.C. State Conf., — F.3d - (4th Cir. 2016) (No. 16-1468). Of course, these submissions as to the March election do not constitute evidence and we cannot consider them as such. Witters v. Washington Dep’t of Servs. for the Blind, 474 U.S. 481, 488 n. 3, 106 S.Ct. 748, 88 L.Ed.2d 846 (1986). And for the June election, we do not even have anecdotal information.
.Thus, we are faced with a statute enacted with racially discriminatory intent, amended before ever implemented in a way that may remedy that harm, and a record incomplete in more than one respect. Given these facts, I would only temporarily enjoin the photo ID requirement and remand the case to the district court to determine if, in practice, the exception fully remedies the discriminatory requirement or if a permanent injunction is necessary. In my view, this approach is that most faithful to Supreme Court teaching as to injunctive relief.

. Recently, a court considering a similar reasonable impediment exception suggested that the exception could remedy an otherwise problematic photo ID requirement. See South Carolina v. United States, 898 F.Supp.2d 30, 35-38 (D.D.C. 2012). In South Carolina, a three-jüdge panel precleared a photo ID requirement with a reasonable impediment exception after finding that it would not "disproportionately and materially burden racial minorities” as compared to the then-existing identification requirement. IL at 38. Here, North Carolina’s reasonable impediment exception "is effectively a codification of th[at] three-judge panel's holding.” N.C. State Conf., - F.Supp.3d at -, 2016 WL 1650774, at *12. See also Veasey v. Abbott, Civil Action No. 2:13-cv-193 (S.D. Tex. July 23, 2016).

. This contrasts with our ability to assess, without remand, whether the State demonstrated that SL 2013-381 would have been enacted without considerations of race. See supra, Part IV. Although the district court did not shift the burden to the State under Arlington Heights, it had already made extensive findings of the relevant foundational facts regarding the State’s proffered justifications. We lack the equivalent findings regarding what discriminatory impact less than a "material burden” may survive the reasonable impediment exception.