AMERICAN FAMILY LIFE ASSUR-
ANCE COMPANY OF COLUM-
BUS, Petitioner,

v.

FEDERAL COMMUNICATIONS COM-
MISSION AND UNITED STATES
OF AMERICA, Respondents.

No. 96–1384.

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 4, 1997.

Decided Nov. 21, 1997.

Craig J. Blakeley argued the cause for petitioner. With him on the briefs was Ronald J. Palenski.

C. Grey Pash, Jr., Counsel, Federal Communications Commission, argued the cause for respondents. With him on the brief were William E. Kennard, General Counsel, Daniel M. Armstrong, Associate General Counsel, Joel I. Klein, Acting Assistant Attorney General, U.S. Department of Justice, Andrea Limmer, and Catherine G. O'Sullivan, Attorneys. James M. Carr, Counsel, Federal Communications Commission, and Robert B. Nicholson, Attorney, U.S. Department of Justice, entered appearances.

Before: SENTELLE, RANDOLPH, and GARLAND, Circuit Judges.

RANDOLPH, Circuit Judge:

In 1996 the Federal Communications Commission ruled that AFLAC Broadcast Partners, then the licensee of six commercial television stations and the owner-operator of a seventh, violated the Communications Act by refusing to sell time to candidates for federal elective office who refused to agree to a forum selection clause contained in AFLAC's standard "Agreement Form for Political Broadcasts." After the Commission's decision, but before the case reached us, AFLAC sold all of its interests in the television stations and apparently dissolved, with petitioner assuming its liabilities. Whether the case is now moot is the first, and as it turns out, the decisive issue.

I

The Dole–Kemp '96 Campaign wanted to buy time on AFLAC's stations. AFLAC insisted on its standard contract, which contained the forum selection clause. The clause designated the Commission as the sole and exclusive forum for resolving disputes about excessive charges for political advertising. Dole–Kemp refused to agree to the clause and AFLAC therefore refused to sell it any time. In August 1996, Dole–Kemp lodged a complaint with the Commission, alleging that AFLAC's insistence on the forum selection clause violated the Communications Act.

The legal context of the complaint was this. Federal candidates for elective office have a "right" to "reasonable access" to broadcast stations to air their advertisements. This right stems from a remedy. The Act authorizes the Commission to revoke a broadcaster's license "for willful or repeated failure" to allow "legally qualified" candidates for federal elective office "reasonable access" to the broadcasting station. 47 U.S.C. § 312(a)(7); see CBS, Inc. v. FCC, 453 U.S. 367, 101 S.Ct. 2813, 69 L.Ed.2d 706 (1981). Federal candidates are not entitled to free advertising time. They must pay, but in the days close to election, broadcasters cannot charge them more than the "lowest unit charge of the station for the same class and amount of time for the same period." 47 U.S.C. § 315(b)(1). In 1991 the Commission declared that it, and it alone, had jurisdiction to decide whether broadcasters had billed candidates for more than the lowest unit charge § 315(b)(1) permitted; that this was solely a federal question; and that state causes of action dependent on any duty arising from § 315(b) were preempted. See In re Exclusive Jurisdiction With Respect to Violations of the Lowest Unit Charge Requirements of Section 315(b) of the Communications Act of 1934, 6 F.C.C.R. 7511, 7511 ¶ 1 (1991); see also Wilson v. A.H. Belo Corp., 87 F.3d 393, 400 (9th Cir.1996) (upholding the declaration); but see Miller v. FCC, 66 F.3d 1140, 1146 (11th Cir.1995).

Sometime after the Commission's announcement, AFLAC—in order to ensure that its candidate-customers would seek Commission resolution of any overbilling disputes—began insisting on the forum selection clause.

In September 1996, the Commission ruled that AFLAC's refusal to sell time to federal candidates unless they agreed to the clause violated the reasonable access provision of § 312(a)(7) because it forced "a federal candidate ... to surrender another legal right." *In re Complaint of Dole–Kemp '96 Campaign,* 11 F.C.C.R. 13036, 13040 ¶ 6 (1996). The other "legal right," as best we can gather, was the right to sue in state or federal court for recovery of overcharges, a right the Commission said in its 1991 pronouncement did not exist. *See id.* at 13039–40 ¶¶ 5–7. AFLAC thereafter deleted the offending clause and sold air time to Dole–Kemp.

The Commission decided several other issues relating to AFLAC's standard contract, but the petition for review contests only the ruling on the forum selection clause. Petitioner thinks this ruling is inconsistent with the Commission's position regarding its exclusive jurisdiction and that, as applied in the ruling, § 312(a)(7) violates the First Amendment to the Constitution. The Commission thinks the case is moot.

## II .

One way of approaching the mootness question is to suppose Dole–Kemp had filed a complaint against AFLAC in a district court rather than at the Commission, that the district court reached the same result as the Commission, that a preliminary injunction issued, and that AFLAC thereafter sold air time to Dole–Kemp without insisting on the forum selection clause. That hypothetical case surely would be moot on appeal. "An appeal from an order granting a preliminary injunction becomes moot when, because of the defendant's compliance or some other change in circumstances, nothing remains to be enjoined through a permanent injunction." *Christian Knights of the Ku Klux Klan v. District of Columbia,* 972 F.2d 365, 369 (D.C.Cir.1992). The demise of the Dole–Kemp ticket plus AFLAC's sale of its stations would preclude saving the case from

mootness on the basis that the issue was "capable of repetition, yet evading review." *Southern Pacific Terminal Co. v. ICC,* 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911); *see Christian Knights,* 972 F.2d at 369–71.

As far as mootness is concerned, is the case before us any different? Yes, in several ways. For one thing the opposing party is the Commission rather than a private litigant. Once an agency's action reaches a court of appeals on review, the controversy no longer consists of simply the private dispute litigated before the agency. The controversy becomes, as then-Judge Scalia pointed out, a dispute between the private party "and the agency concerning the lawfulness of the agency action." *Radiofone, Inc. v. FCC,* 759 F.2d 936, 940 (D.C.Cir.1985) (separate opinion). That Dole–Kemp received full satisfaction, therefore, does not necessarily put this controversy to rest. As a regulator, the Commission has a continuing interest in forbidding forum selection clauses like AFLAC's. Also, unlike an injunction ordering AFLAC to sell time to Dole–Kemp, the Commission's Order was not restricted to granting relief to the complaining party. Rather, the Order directed AFLAC "to conform its practices consistent with our holding herein." *In re Complaint of Dole–Kemp '96 Campaign,* 11 F.C.C.R. at 13041 ¶ 10. In other words, the Commission directed AFLAC to stop insisting on the clause when any federal candidate sought to buy time from any of its stations. Whether the Order also reached back to contracts already signed and completed is a question we discuss later.

These considerations, and others, are taken for granted in the Commission's mootness argument. The Commission correctly focuses not on the circumstances of Dole–Kemp, but on the change in AFLAC's situation brought about by the sale of its stations after the Commission's Order issued. The natural and obvious question is why, in light of the sale, petitioner still cares about the Commission's ruling? Petitioner gives this answer: AFLAC will not be negotiating with candidates for air time in the future, but it entered into contracts containing the offending clause in the past. Petitioner tells us that not all of

the state statutes of limitations have run. (We shall assume that state statutes of limitations control. *But see In re Complaint of Harvey Sloane,* 12 F.C.C.R. 8513, 8515 ¶¶ 7, 9 (1997).) Stuck with AFLAC's liabilities, petitioner worries about being haled into state court for having overcharged some former candidate for federal office. If AFLAC's forum selection clause were valid— that is, if we agreed with petitioner's arguments on the merits—the state court would respect our judgment and dismiss the complaint, or perhaps transfer the case to the Commission. The Commission's Order, petitioner concludes, is thus a source of a continuing injury because, so long as the Order stands, petitioner is being deprived of the benefit of the bargains AFLAC struck with federal candidates.

■ Of course, infringements of common-law rights, including contract rights, can cause the sorts of injuries that give rise to— in the Supreme Court's words—"real," "live," "actual," "cognizable," "present," "genuine," "ongoing," "continuing," "substantial" Article III "Cases" and "Controversies." *See Tennessee Elec. Power Co. v. TVA,* 306 U.S. 118, 137–38, 59 S.Ct. 366, 369–70, 83 L.Ed. 543 (1939); *United States Nat'l Bank of Oregon v. Independent Ins. Agents of America,* 508 U.S. 439, 446, 113 S.Ct. 2173, 2178, 124 L.Ed.2d 402 (1993); *Arizonans for Official English v. Arizona,* —— U.S. ——, ——, 117 S.Ct. 1055, 1068, 137 L.Ed.2d 170 (1997); *Raines v. Byrd,* —— U.S. ——, ——, 117 S.Ct. 2312, 2317, 138 L.Ed.2d 849 (1997); *ASARCO, Inc. v. Kadish,* 490 U.S. 605, 619, 109 S.Ct. 2037, 2046–47, 104 L.Ed.2d 696 (1989); *City of Los Angeles v. Lyons,* 461 U.S. 95, 102, 103 S.Ct. 1660, 1665, 75 L.Ed.2d 675 (1983); *Suitum v. Tahoe Regional Planning Agency,* —— U.S. ——, —— n. 7, 117 S.Ct. 1659, 1664 n. 7, 137 L.Ed.2d 980 (1997); *Lewis v. Continental Bank Corp.,* 494 U.S. 472, 477, 110 S.Ct. 1249, 1253, 108 L.Ed.2d 400 (1990); *Board of License Comm'rs v. Pastore,* 469 U.S. 238, 240, 105 S.Ct. 685, 686, 83 L.Ed.2d 618 (1985); *North Carolina v. Rice,* 404 U.S. 244, 246, 92 S.Ct. 402, 404, 30 L.Ed.2d 413 (1971). As some of these modifiers suggest, the controversy must exist not only at the start but also throughout all stages of judicial review. *See Arizonans for Official English,* —— U.S. at ——, 117 S.Ct. at 1068. And as we are regularly reminded, to save a case from mootness the ongoing injury must be more than a "remote possibility," not "conjectural," more than "speculative." *Warth v. Seldin,* 422 U.S. 490, 507, 95 S.Ct. 2197, 2209–10, 45 L.Ed.2d 343 (1975); *City of Los Angeles,* 461 U.S. at 102, 103 S.Ct. at 1665. This is where petitioner runs into trouble. Petitioner reports no litigation on the horizon, no complaints from federal candidates on the verge of filing, no simmering disputes about to erupt into a lawsuit alleging excessive charges. And the problems do not end there.

Petitioner treats the Commission's decision as having "voided" all of the forum selection clauses in AFLAC's contracts. We doubt the decision was meant to have, or could have had, that consequence. Petitioner faces no impending threat of Commission sanctions if it asserts the clause in state court litigation. The Commission acted under § 312(a)(7), a provision granting it authority to revoke a broadcaster's licenses. If, after the Commission's decision, AFLAC had persisted in using and asserting the clause, the Commission could have invoked § 312(a)(7) to put AFLAC out of the broadcasting business, a prospect that would certainly have rendered the case a live one for Article III purposes. But the sword is no longer hanging over AFLAC's head. AFLAC has no broadcasting licenses to revoke; it put itself out of the business after the Commission's decision.

In what respect, then, has the Commission "voided" AFLAC's forum selection clauses? Petitioner replies: a state court would be "bound" by the Commission's ruling and thus would refuse to enforce the clause. But are state courts so "bound"? Whether a federal court of appeals would sustain the Commission's ruling that the clause violates § 312(a)(7) remains to be seen. Like the lower federal courts, state courts fulfilling their duty to comply with *Chevron, U.S.A., Inc. v. NRDC,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), would not necessarily have to uphold the Commission's decision as a matter of federal law. *See Arizonans for Official English,* —— U.S. at —— n. 11, 117

S.Ct. at 1064 n. 11; *ASARCO,* 490 U.S. at 617, 109 S.Ct. at 2045–46.

More important, petitioner forgets that the Commission acted to enforce § 312(a)(7), to prevent AFLAC from refusing to sell time to federal candidates. Yet the litigation petitioner fears would not be about AFLAC's refusal to sell time. No former federal candidate could sue AFLAC for charging too much unless the candidate had agreed to the forum selection clause, bought time, and broadcast advertisements on AFLAC's stations. The Commission's Order did not direct AFLAC to take any action with respect to these individuals. The Order, as counsel for the Commission stated at oral argument, was prospective only. With respect to candidates who aired their advertisements, it is possible that AFLAC overbilled them, but it is not possible that AFLAC violated § 312(a)(7) by refusing to sell them time. The Commission's Order, in short, could not have "voided" the forum selection clauses in contracts already consummated, yet these are the only contracts petitioner thinks may be subject to litigation in state court sometime in the future.

There is nothing to petitioner's related point that the severability clause in AFLAC's standard contract will itself render the forum selection clause void. The severability clause states that "if any term or provision of this Agreement contravenes or is invalid under any federal, state or local law, court decision, rule, ordinance or regulation or administrative sanction (including that of the FCC *as upheld by a reviewing court with applicable jurisdiction* ), [t]his Agreement shall be construed as if it did not contain the offending term or provision." J.A. 38 (italics added). This clause cannot breathe life into a controversy that has come to rest. If we declare the case moot we will not have "upheld" the Commission and so the severability provision would not make the forum selection clause inoperative.

What other possible legal consequences could flow from the Commission's Order? We suppose some hypothetical state court litigant could try to invoke collateral estoppel to prevent petitioner from relying on the forum selection clause. But petitioner does not raise this specter, doubtless because it is so far-fetched. We do not deny that agency adjudications may have preclusive effects. *See Astoria Fed. Sav. & Loan Ass'n v. Solimino,* 501 U.S. 104, 107–08, 111 S.Ct. 2166, 2169–70, 115 L.Ed.2d 96 (1991); RESTATEMENT (SECOND) OF JUDGMENTS § 83 (1982). But if the state court agreed with our analysis of § 312(a)(7) and the prospective-only effect of the Commission's Order, and if the state court generally followed the same principles of offensive use of collateral estoppel as we do, petitioner would have no cause for concern. *See Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 331, 99 S.Ct. 645, 651–52, 58 L.Ed.2d 552 (1979); *Milton S. Kronheim & Co. v. District of Columbia,* 91 F.3d 193, 197 (D.C.Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1468, 137 L.Ed.2d 681 (1997); 47 C.F.R. § 1.45(c) (1997); *North American Telecomm. Ass'n,* FCC 86–304 app., File No. E–85–1, 60 R.R.2d 1355, 1365 (Aug. 1, 1986); *see also Montana v. United States,* 440 U.S. 147, 157, 99 S.Ct. 970, 975–76, 59 L.Ed.2d 210 (1979); *Jack Faucett Assocs., Inc. v. American Tel. & Tel. Co.,* 744 F.2d 118, 125 (D.C.Cir.1984).

What we are left with, then, is simply the impact of the Commission's precedent—or more precisely, the impact of the rationale contained in it—on a state court in future litigation. Yet we have said before, and we say again, that the "mere precedential effect of [an] agency's rationale in later adjudications" is not an injury sufficient to confer standing on someone seeking judicial review of the agency's ruling. *Radiofone,* 759 F.2d at 939; *see also Shell Oil Co. v. FERC,* 47 F.3d 1186, 1201–02 (D.C.Cir.1995); *Crowley Caribbean Transport, Inc. v. Pena,* 37 F.3d 671, 674 (D.C.Cir.1994); *Telecommunications Research & Action Ctr. v. FCC,* 917 F.2d 585, 588 (D.C.Cir.1990). The "later adjudications" mentioned in *Radiofone* were later adjudications by the same agency. But the principle still has force, indeed is all the more telling, in our context, which deals with the effect of an agency precedent on later state court proceedings. It is all the more telling because the "precedent" we are considering is not the product of the future decisionmaker, that is, the state court. Un-

like the situation in *Radiofone,* stare decisis therefore will not apply.

Any assessment of the impact of the Commission's ruling thus necessarily entails a long string of "ifs." *If* a former federal candidate who entered into the standard contract thought he or she had been overcharged by AFLAC; and *if* this individual marched into a state court; and *if* the state judge found that the Commission had decided the validity of the forum selection clause in contracts already completed; and *if* this judge thought that the Commission's Order decided the matter correctly, taking due account of the principles of *Chevron;* and *if* the state judge therefore declared the forum selection clause invalid under § 312(a)(7); and *if,* despite *Chevron,* the state judge rejected the Commission's 1991 pronouncement that the agency had sole and exclusive jurisdiction over these matters, so that the state case could go forward—then and only then would petitioner suffer harm from the Commission's Order, the harm being having to defend itself in a state court rather than before the Commission. We would be unwilling to credit such gross speculation for the purpose of establishing standing, and we are equally unwilling to do so for the purpose of deciding the related question whether we have a live controversy before us.

None of what we have written would be affected if, as petitioner seems to suggest, we treated the Commission's decision here as a "declaratory ruling" articulating a general policy that similar forum selection clauses in political advertising contracts with federal candidates are inconsistent with § 312(a)(7). Characterizing the Commission's decision that way neither gives it greater status in terms of its binding effect in state court litigation, nor makes it more likely that petitioner will be injured by the decision. *See Tennessee Gas Pipeline Co. v. Federal Power Comm'n,* 606 F.2d 1373, 1382 n. 40 (D.C.Cir. 1979). Accordingly, we hold that this petition for judicial review is moot.

### III

■ Our decision that the case is now moot leads to the question—on which we ordered supplemental briefing—whether we

should vacate the Commission's unreviewed Order. The Supreme Court's decision in *A.L. Mechling Barge Lines, Inc. v. United States,* 368 U.S. 324, 82 S.Ct. 337, 7 L.Ed.2d 317 (1961), is, we believe, controlling. Extending the principle of *United States v. Munsingwear,* 340 U.S. 36, 71 S.Ct. 104, 95 L.Ed. 36 (1950), to "unreviewed administrative orders," *Mechling* held that federal courts should vacate agency orders they decline to review on grounds of mootness. 368 U.S. at 329, 82 S.Ct. at 340–41. Since *Mechling* we have, as a matter of course, vacated agency orders in cases that have become moot by the time of judicial review. *See, e.g., Northwest Pipeline Corp. v. FERC,* 863 F.2d 73, 79 (D.C.Cir.1988); *Radiofone,* 759 F.2d at 938; *Hollister Ranch Owners' Ass'n v. FERC,* 759 F.2d 898, 901–02 (D.C.Cir.1985); *Tennessee Gas Pipeline,* 606 F.2d at 1382–83.

Not surprisingly, the Commission opposes this course of action. It argues against vacatur on the grounds that (1) AFLAC caused this dispute to become moot through its "unilateral, voluntary action"; (2) it is entirely "speculative" that the Commission's Order will have any preclusive effects on petitioner in the future; and (3) the continuing precedential force of the Order remains valuable to the public.

The Commission's first point misinterprets *U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership,* 513 U.S. 18, 115 S.Ct. 386, 130 L.Ed.2d 233 (1994). Vacatur is generally not justified, the Court held, when "the party seeking relief from the judgment below caused the mootness by voluntary action" in settling the case. *Id.* at 24, 115 S.Ct. at 391. The specific holding of *Bancorp,* concerning as it does settlements, has no application here. Nor does the Court's general reasoning. *See id.* at 25, 29, 115 S.Ct. at 391–92, 393–94; *see also Anderson v. Green,* 513 U.S. 557, 560, 115 S.Ct. 1059, 1060–61, 130 L.Ed.2d 1050 (1995); *Karcher v. May,* 484 U.S. 72, 83, 108 S.Ct. 388, 395–96, 98 L.Ed.2d 327 (1987); *Mahoney v. Babbitt,* 113 F.3d 219, 221–22 (D.C.Cir.1997); *National Black Police Ass'n v. District of Columbia,* 108 F.3d 346, 351–52, 354 (D.C.Cir.1997); *National Football League Players Ass'n v. Pro-Football, Inc.,* 79 F.3d 1215, 1216–17

(D.C.Cir.1996). AFLAC announced the sale of its stations before Dole–Kemp even complained to the Commission. It did not sell the stations in order to moot this case; in fact, its successor argues vigorously that the case is still alive.

The Commission's second point, we believe, goes to the equities. Once we pass from the issue of mootness to the issue of remedy, we still may encounter some lingering though remote possibility of residual collateral harm to petitioner from the unreviewed Order. Recourse to the "equitable tradition of vacatur" may be warranted, then, partly because it eliminates that possibility altogether. *Bancorp,* 513 U.S. at 25, 115 S.Ct. at 391–92. In saying this we simply follow—as indeed we must—the Court's lead in *Munsingwear,* 340 U.S. at 41, 71 S.Ct. at 107, which utilized vacatur "to prevent a judgment, unreviewable because of mootness, from spawning any legal consequences." In *Mechling* also the barge owners as petitioners wanted the Interstate Commerce Commission's order vacated to avoid having it serve as a defense in future actions they might bring against railroads for damages. *See* 368 U.S. at 328–29, 82 S.Ct. at 340–41. It may, as the Commission puts it, be "speculative" whether leaving the Order standing could cause some residual harm, but vacating the Order puts the speculation to rest. *See, e.g., Radiofone,* 759 F.2d at 941; *Hollister Ranch Owners' Ass'n,* 759 F.2d at 901–02; *see also Greenwich Collieries v. Director, Office of Workers' Compensation Programs, United States Dep't of Labor,* 732 F.2d 343, 344–45 (3d Cir.1984).

The Commission's third reason for opposing vacatur again reflects a misunderstanding of *Bancorp.* Recognizing the value of judicial opinions to the public, *Bancorp* stated that precedents should not be treated as "merely the property of private litigants" to be casually set aside whenever, through settlement rather than appeal, a party avoids the full consequences of an adverse judgment. 513 U.S. at 26, 27, 115 S.Ct. at 392, 392–93 (internal quotation marks and citation omitted); *see also Mahoney,* 113 F.3d at 222–23. The Court never suggested, nor have we, that the precedential value of a decision alone renders vacatur inappropriate. Such a rule would swallow *Munsingwear.* The petitioner in this case did not, through the sale of AFLAC's broadcasting interests, attempt to employ some sort of "refined collateral attack" on the Commission's Order. *Bancorp,* 513 U.S. at 27, 115 S.Ct. at 392–93. Having sought "review of the merits of an adverse ruling" and having been "frustrated by the vagaries of circumstance, petitioner ought not in fairness be forced to acquiesce" in the Commission's judgment. *Id.* at 25, 115 S.Ct. at 391; *see also Tennessee Gas Pipeline,* 606 F.2d at 1382–83.

*       *       *

AFLAC's petition for review is dismissed as moot and the Commission's Order is vacated.

*So ordered.*