**PANHANDLE EASTERN PIPE LINE COMPANY, Petitioner,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent.**

**Semco Energy Gas Company, et al., Intervenors**

No. 98–1409.

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 12, 1999.

Decided Dec. 14, 1999.

Lawrence G. Acker argued the cause for petitioner. With him on the briefs were Mary A. Murphy and Merlin E. Remmenga. F. Nan Todd Wagoner and Richard J. Kruse, Jr., entered appearances.

Judith A. Albert, Attorney, Federal Energy Regulatory Commission, argued the cause for respondent. With her on the brief were Jay L. Witkin, Solicitor, and Susan J. Court, Special Counsel.

Before: EDWARDS, Chief Judge, SILBERMAN and ROGERS, Circuit Judges.

Opinion for the Court filed by Chief Judge EDWARDS.

Harry T. EDWARDS, Chief Judge:

Petitioner, Panhandle Eastern Pipe Line Co. ("Panhandle"), implores this court to vacate two opinions of the Federal Energy Regulatory Commission ("FERC" or the "Commission") that have been rendered moot by a settlement entered into between Panhandle and a group of its customers. Panhandle argues that, because FERC concedes that the two opinions do not reflect final orders and because the settlement ensures that the challenged opinions will never become final, this court should remand the opinions to FERC with instructions to vacate them.

■ FERC responds that, because Panhandle is not an "aggrieved" party, as required by Section 19(b) of the Natural Gas Act ("NGA"), *see* 15 U.S.C. § 717r(b) (1994), the court has no jurisdiction over the instant case. In other words, FERC claims that the now moot opinions are nothing more than general statements of policy that give rise to no justiciable claims. Alternatively, FERC contends that, under *U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership*, 513 U.S. 18, 115 S.Ct. 386, 130 L.Ed.2d 233 (1994), absent extraordinary circumstances, a federal court will not vacate a judgment that has been rendered moot by voluntary settlement. FERC is right on the first count; accordingly, we deny Panhandle's petition for review.

■ We reject FERC's alternative argument resting on *U.S. Bancorp*. This case differs from *U.S. Bancorp*, because the disputed issues here were rendered moot while the case was still before the agency and before any jurisdiction was found in federal court. *U.S. Bancorp* and other such cases apply only to determine the jurisdiction of Article III courts, not administrative agencies, and to instruct when an opinion must be vacated after a federal court loses its jurisdiction. For example, in *American Family Life Assurance Co. v. FCC*, 129 F.3d 625 (D.C.Cir. 1997), we held that "federal courts should vacate agency orders they decline to review on grounds of mootness." *Id.* at 630. Here, however, no federal court has had jurisdiction over the instant case, because the agency never issued a final, appealable order. In short, there are no "unreviewed administrative orders" extant. *Id.* Therefore, *U.S. Bancorp* and *American Family Life* have no sway in the resolution of this matter.

I. BACKGROUND

In September 1991, Panhandle initiated a rate proceeding under Section 4 of the NGA. FERC accepted and suspended the filing, and set the proposed rates for hearing. In August 1994, an Administrative Law Judge issued an initial decision relating to numerous issues concerning Pan-

handle's proposed rates. Unhappy with many of the judge's conclusions, "[v]arious parties filed exceptions to most of the [Administrative Law Judge's] rulings." *Panhandle Eastern Pipe Line Co.*, 83 F.E.R.C. ¶ 61,353, at 62,419 (1998). On May 25, 1995, the Commission addressed these exceptions in *Panhandle Eastern Pipe Line*, 71 F.E.R.C. ¶ 61,228, at 61,819 (1995) ("Opinion No. 395"), the first of the two challenged opinions. Panhandle and several of its customers were dissatisfied, and they requested rehearing.

In May 1992, while the fate of its first filing was still pending, Panhandle initiated a second Section 4 rate filing. Just as it had with the first filing, the Commission accepted and suspended the filing, and set the proposed rates for hearing. In December 1994, the Administrative Law Judge in this second case issued an initial decision, which, like its predecessor, met with exceptions. On February 5, 1996, FERC issued *Panhandle Eastern Pipe Line Co.*, 74 F.E.R.C. ¶ 61,109, at 61,351 (1996) ("Opinion No. 404"), the second of the challenged opinions. A petition for rehearing followed.

The Commission never had the opportunity, however, to address either of the pending requests for rehearing. In September 1996, while both requests were still pending, and before any final orders were issued by the agency, Panhandle and a group of its customers filed a settlement aimed at resolving both of the previous rate cases and related proceedings. On December 20, 1996, the Commission approved the settlement "as a fair and equitable resolution." *Panhandle Eastern Pipe Line Co.*, 83 F.E.R.C. ¶ 61,353, at 62,419. On December 2, 1997, Panhandle filed a motion to vacate the challenged opinions. On April 1, 1998, the Commission denied Panhandle's motion to vacate, holding that, because vacatur is an equitable remedy, it is unjustified when the party seeking vacatur has settled the underlying case and thus rendered it moot. *See Panhandle Eastern Pipe Line Co.*, 83 F.E.R.C. ¶ 61,008, at 61,029–31 (1998) (citing *U.S. Bancorp*, 513 U.S. at 18, 115 S.Ct. 386). The Commission also noted that it had invested significant resources in conducting hearings and that the challenged opinions offered useful discussions of recurring issues. *See id.* at 61,030. On May 1, 1998, Panhandle sought rehearing on FERC's refusal to vacate the opinions. On June 30, 1998, FERC denied Panhandle's request. *See Panhandle*, 83 F.E.R.C. ¶ 61,353, at 62,418. This petition for review followed.

## II. ANALYSIS

Section 19(b) of the NGA requires a party seeking judicial review to be "aggrieved." *See* 15 U.S.C. § 717r(b); *see also El Paso Natural Gas Co. v. FERC*, 50 F.3d 23, 26 (D.C.Cir.1995) ("[O]nly a party that is 'aggrieved' by an order issued under the Act may obtain judicial review thereof."). Because such a party must also satisfy the requirements of constitutional standing, a petitioner must establish "at a minimum, 'injury in fact' to a protected interest." *El Paso*, 50 F.3d at 26 (quoting *Shell Oil Co. v. FERC*, 47 F.3d 1186, 1200 (D.C.Cir.1995)). A party establishes an injury-in-fact under Article III by alleging "an invasion of legally protected interests that is both (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Id.* In addition, "[j]udicial review is limited to 'orders of definitive impact, where judicial abstention would result in irreparable injury to a party.'" *CNG Transmission Corp. v. FERC*, 40 F.3d 1289, 1292 (D.C.Cir.1994) (quoting *Papago Tribal Util. Auth. v. FERC*, 628 F.2d 235, 238 (D.C.Cir.1980)).

Panhandle's problem in this case is twofold: It is not an aggrieved party under the NGA, and it lacks standing to appear in federal court. There is no aggrievement in this case, because FERC never issued final judgments disposing of Panhandle's rate filings. Both filings were pending rehearing when Panhandle voluntarily entered into a settlement that ren-

dered moot the claims before FERC. Thus, there was no "order issued by the Commission" from which Panhandle could obtain judicial review under 15 U.S.C. § 717r(b).

Panhandle resists this conclusion by arguing that it was "injured" enough to satisfy both section 19(b) and Article III standing requirements when FERC refused to vacate the contested opinions that were pending rehearing. FERC, in turn, contends that the disputed opinions are nothing more than "policy statements," binding on no party and having no precedential effect. On this view, FERC asserts that the mere existence of the disputed opinions causes Panhandle no harm. FERC surely has the better argument.

■ In *Pacific Gas & Electric Co. v. Federal Power Commission*, 506 F.2d 33 (D.C.Cir.1974), this court delineated the distinction between a substantive rule and a policy statement. The court noted that 5 U.S.C. § 553(b)(A) allows an agency to issue a general statement of policy, which differs from a substantive rule in that a policy statement is "neither a rule nor a precedent but is merely an announcement to the public of the policy which the agency hopes to implement in future rulemakings or adjudications." *Id.* at 38. In this sense, a policy statement is "like a press release" in that it "presages an upcoming rulemaking or announces the course which the agency intends to follow in future adjudications." *Id.*; *see also American Hosp. Ass'n v. Bowen*, 834 F.2d 1037, 1046–47 (D.C.Cir.1987) (analyzing the nature of policy statements).

This advance-notice function of policy statements yields significant informational benefits, because policy statements give the public a chance to contemplate an agency's views before those views are applied to particular factual circumstances. This opportunity to anticipate the agency's actions "facilitates long range planning within the regulated industry and promotes uniformity in areas of national concern." *Pacific Gas*, 506 F.2d at 38. This

period of foreshadowing is made even more useful by the fact that, unlike substantive rules,

> [a] general statement of policy ... does not establish a "binding norm." It is not finally determinative of the issues or rights to which it is addressed. The agency cannot apply or rely upon a general statement of policy as law because a general statement of policy only announces what the agency seeks to establish as policy. A policy statement announces the agency's tentative intentions for the future. When the agency applies the policy in a particular situation, it must be prepared to support the policy just as if the policy statement had never been issued. An agency cannot escape its responsibility to present evidence and reasoning supporting its substantive rules by announcing binding precedent in the form of a general statement of policy.

*Id.* at 38–39 (footnotes omitted). In other words, a policy statement has neither the force of a substantive rule adopted pursuant to rulemaking nor the binding effect of an order following an adjudication.

The Commission has confused matters somewhat in this case by noting the "ongoing precedential value" of the challenged opinions, Br. for Respondent FERC at 16, as if to suggest that the opinions serve as binding precedent. *See also Panhandle Eastern Pipe Line Co.*, 83 F.E.R.C. ¶ 61,-353, at 62,420 (noting that the parts of the challenged opinions that "contain discussions of issues that appear before the Commission time and time again ... can and do serve as precedent"). More telling, however, is FERC's failure to issue final judgments on the merits of Panhandle's claims and the agency's acceptance of the settlement to moot the pending claims. In its brief to this court, FERC conceded that the challenged opinions serve only as policy statements that have no binding effect. *See* Br. for Respondent at 17 ("[T]he only colorable effect, if any, of *Opinion Nos. 395* and *404* is that they leave in public

view statements of Commission policy which would not be judicially reviewable until the Commission has applied it in a concrete situation."). And, during oral argument, Government counsel acknowledged unhesitatingly that the disputed opinions have no precedential value. In short, for the most part, the Commission has been unwavering in explaining that the challenged opinions are "the functional equivalent of a Commission policy statement." *Id.* at 27; *see also Panhandle Eastern Pipe Line Co.*, 83 F.E.R.C. ¶ 61,-008, at 61,031 ("In future cases, Panhandle or any other·person may seek an outcome contrary to Opinion Nos. 395 and 404, either based on arguments similar to those contained in the requests for rehearing of Opinion Nos. 395 and 404 or for other reasons, and the Commission will consider those contentions.").

In light of the record at hand, it is clear that Panhandle can cite no injury-in-fact in support of standing. Panhandle's rates for the relevant time periods were set by the settlement agreement, so they were unaffected by the challenged opinions. And there is no recognizable residual harm that can result from FERC's continued publication of the opinions as policy statements. FERC concedes that the challenged opinions now serve only as policy statements that have no binding effect on Panhandle. Thus, because Panhandle can point to no harm that can be redressed by this court, it fails to satisfy the requirements of section 19(b) of the NGA and Article III standing.

### III. Conclusion

The challenged opinions are non-binding policy statements. As a result, Panhandle is not aggrieved and has not suffered an injury-in-fact. We therefore deny Panhandle's petition for review.